**Robert W. DILLARD and Diane Dillard, Appellants,**

v.

**AUSTIN INDEPENDENT SCHOOL DISTRICT, Appellee.**

**No. 3–88–241–CV.**

Court of Appeals of Texas, Austin.

March 20, 1991.

Bill Whitehurst and Scott Ozmun, Austin, for appellants.

Larry F. York, Austin, for appellee.

Before POWERS, GAMMAGE and JONES, JJ.

ON MOTION FOR REHEARING

PER CURIAM.

Our opinion of December 19, 1990, is withdrawn and the following is substituted therefor.

At issue in this cause is the extent of a school district's governmental immunity and its liability for initiating condemnation proceedings. The district court granted a motion for summary judgment based on governmental immunity and the absence of a taking under article I, section 17 of the Texas Constitution. We will affirm the judgment of the district court.[1]

In 1984 the Austin Independent School District (AISD) board of trustees voted to negotiate to purchase or condemn twenty-four acres of land owned by Robert W. Dillard and Diane Dillard (the Dillards). This land was to be used for a new high school in south Austin. The Dillards were amenable to selling their land to AISD and platted the land and obtained various surveys and permits that were necessary in order to develop the property, allegedly spending $151,000.00 of their own money in the process. AISD later purchased a different tract of land for the school from Gary Bradley in February 1986.

The Dillards sued for damages in excess of three million dollars for both their expenses in developing the property and for diminution in value of the land, alleging causes of action for breach of contract, promissory and equitable estoppel, breach of the duty of good faith negotiation, slander of title, fraud, gross negligence, and a taking under article I, section 17 of the Texas Constitution. The trial court found that: (1) no contract existed between the Dillards and AISD; (2) the doctrines of promissory and equitable estoppel are inapplicable because AISD is protected by governmental immunity; (3) governmental immunity barred causes of action based on fraud, slander of title, gross negligence, and breach of the duty of good faith negotiation; and (4) the Dillards's property was

---

1. In this opinion we use the term "governmental immunity" to refer to sovereign immunity; "governmental unit" to refer to the state, its agencies, and political subdivisions such as cities, counties, and school districts; and "public servant" to refer to a state official, officer, or employee.

not taken so as to invoke the protection of article I, section 17 of the Texas Constitution. The Dillards, in four points of error, argue that governmental immunity does not bar claims based on: (1) promissory and equitable estoppel; (2) a taking under article I, section 17 of the Texas Constitution; (3) fraud; and (4) breach of the duty of good faith negotiation.

■ When a defendant moves for summary judgment on the basis of an affirmative defense such as governmental immunity, it must conclusively prove all essential elements of that defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). AISD, thus, had the burden of showing that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985).

## I. GOVERNMENTAL IMMUNITY

In their first point of error, the Dillards claim the trial court erred in holding that governmental immunity barred the application of the doctrines of promissory and equitable estoppel against AISD. We agree with the trial court.

### A. General Principles

■ Governmental immunity consists of two basic principles of law.[2] First, the state as sovereign is immune from suit without consent even though there is no dispute regarding the state's liability. *Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970); *see, e.g., Hosner v. De Young*, 1 Tex. 764, 769 (1847); *Board of Land Comm'rs v. Walling*, Dallam 524, 525–26 (Tex.1843). The doctrine bars a suit against the state unless the state has expressly given its consent to be sued. *See, e.g., Missouri Pac. R.R.* at 814 (statute creating a navigation district that states that the district can "sue and be sued in all courts of this state" is sufficient consent to sue the state); Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.025 (1986) (person having a

claim under the Tort Claims Act is granted permission to sue) [hereinafter Tort Claims Act]; Tex.Civ.Prac. & Rem.Code Ann. §§ 107.001–.005 (Supp.1991) (legislative resolution granting permission to sue the state).

Second, the state has immunity from liability even though the state has consented to be sued. *Missouri Pac. R.R.*, 453 S.W.2d at 813; *State v. Isbell*, 127 Tex. 399, 94 S.W.2d 423, 424 (1936); Tex.Civ.Prac. & Rem.Code Ann. § 107.002(b) (Supp.1991) (legislative resolution granting permission to sue the state does not waive immunity from liability); *see, e.g.,* Tort Claims Act §§ 101.021, .023, .025(a), .107 (1986 & Supp. 1991). An important corollary is that the state is generally not liable for the acts of public servants. *E.g., Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976); *Whitfield v. City of Paris*, 84 Tex. 431, 19 S.W. 566, 567 (1892) (doctrine of respondeat superior does not apply against the state); *City of Galveston v. Posnainsky*, 62 Tex. 118, 125 (1884); Tex.Civ.Prac. & Rem.Code Ann. §§ 104.001–.008 (1986 & Supp.1991) (state liability for conduct of public servants).

■ A critical exception, however, is that the state waives its immunity from liability when it contracts:

> It is well settled that so long as the state is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign, and has prerogatives which do not appertain to the individual citizen; but when it becomes ... a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual.

*Fristoe v. Blum*, 92 Tex. 76, 45 S.W. 998, 999 (1898); *see State v. Elliott*, 212 S.W. 695, 698 (Tex.Civ.App.1919, writ ref'd). The state is still immune from suit sounding in contract, however, even though the state has consented to liability by the act of contracting. *Elliott*, 212 S.W. at 698 ("Because of her sovereignty, the state is not

---

2. The supreme court has held that the defense of governmental immunity is waived if not affirmatively pleaded. *Davis v. City of San Antonio*, 752 S.W.2d 518, 520 (Tex.1988).

amenable to the processes of courts, and cannot be sued therein, without her consent, but this in no way detracts from the proposition that she may be liable."); *see, e.g., Miller v. Hood,* 536 S.W.2d 278, 284 (Tex.Civ.App.1976, writ ref'd n.r.e.); *Townsend v. Memorial Medical Center,* 529 S.W.2d 264, 267 (Tex.Civ.App.1975, writ ref'd n.r.e.)[3]; *Ferguson v. Johnson,* 57 S.W.2d 372, 376 (Tex.Civ.App.1933, writ dism'd). The *Fristoe* doctrine also applies to deeds and leases. *Rutherford Oil Corp. v. General Land Office,* 776 S.W.2d 232, 235 (Tex.App.1989, no writ).

Although the justifications for governmental immunity have long been criticized, the supreme court has said that the waiver of governmental immunity is a matter properly addressed to the legislature, not the courts. *Lowe,* 540 S.W.2d at 298.

B. The Governmental/Proprietary Distinction

The distinction between municipalities and other governmental units is fundamental to Texas governmental-immunity jurisprudence. In *City of Galveston v. Posnainsky,* the supreme court first carved out an exception to governmental immunity by defining a municipality's liability in terms of its governmental and proprietary functions. In writing the *Posnainsky* opinion, Justice Stayton set out the basis for the distinction between governmental and proprietary functions as follows:

> In so far as a *quasi* corporation exercises powers exclusively public in their character, forced upon it without its consent, simply because the state can thus, through such local agencies, more easily and effectively discharge duties essentially its own, it is but proper that no action should be maintained against it for the negligence, or even misfeasance, of its officers, unless the action be given by

an expression of the same sovereign will which arbitrarily imposed the duty.

. . . . .

> It would seem that, in so far as municipal corporations of any class, and however incorporated, exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state,— they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be.

. . . . .

> In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable.

*Posnainsky,* 62 Tex. at 125, 127, quoted in *City of Austin v. Daniels,* 160 Tex. 628, 335 S.W.2d 753, 755 n. 3 (1960).

Although courts in the past have differed on the scope of governmental immunity and on which subdivisions of the state may exercise proprietary functions, it is now the settled law of this state that governmental immunity extends to all agencies, political subdivisions, and other institutions which are derived from the state constitution and laws. *See* Tort Claims Act §. 101.001(2) (Supp.1991).[4] The

---

**3.** We do not agree with the statement in *Townsend* that an enabling statute which grants a governmental unit the power to sue or be sued does not waive immunity from suit. *Townsend,* 529 S.W.2d at 267. We believe that this statement runs contrary to the supreme court's opinion in *Missouri Pacific Railroad,* 453 S.W.2d at 814.

**4.** The distinction as to what governmental units are entitled to governmental immunity is confused by the following language in a revisor's note to the Texas Tort Claims Act: "Only the state and its agencies have sovereign immunity. The revised law omits the [language of the prior law] to avoid the implication that sovereign immunity applies to local governmental units."

only exception to the general rule of governmental immunity is that a municipality is not immune for its proprietary functions, a theory first expressed in *Posnainsky*. *See* Tort Claims Act § 101.0215 (Supp. 1991).

## C. Estoppel

■ The supreme court has said that when a governmental unit is exercising governmental powers it is not subject to estoppel. *Leeco Gas & Oil Co. v. County of Nueces*, 736 S.W.2d 629, 630 (Tex.1987); *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex.1970); *see City of San Angelo v. Deutsch*, 126 Tex. 532, 91 S.W.2d 308, 310 (1936). This is a corollary to the governmental-immunity rule that the state is not liable for the acts of public servants. *See e.g., Lowe*, 540 S.W.2d at 298; *Whitfield*, 19 S.W. at 567; *Posnainsky*, 62 Tex. at 125; Tex.Civ.Prac. & Rem.Code Ann. §§ 104.001–.008 (1986 & Supp.1991) (state liability for conduct of public servants).

The supreme court in *Deutsch* explained the rationale for the state's immunity from estoppel as follows:

> Estoppel when applied against a city imposes loss upon it or deprives it of a right which it would have but for the act constituting the ground of estoppel and thus is in effect like liability for a negligent act. In both cases conflict arises between the rights or interests of the public and those of the individual. The rule is that when such conflict arises the rights or interests of the individual must yield. This is necessary because the city's public or governmental business must go forward, unimpeded by the fault, negligence or frailty of those charged with its administration. A court which holds that a city is not liable in damages for injuries suffered from the negligence of its officer or agent engaged in the performance of a governmental function cannot consistently hold that the city is estopped by the act of its officer or agent engaged in the performance of a governmental function, unless there are peculiar facts which give rise to other equities than loss or injury to the individual who has relied upon the act of the officer or agent.

*Deutsch*, 126 Tex. at 536 (text differs from text in Southwestern Reporter), 91 S.W.2d at 310 (punctuation as in 126 Tex. 532, 536, 91 S.W.2d 308). *Deutsch* also stated that a city may be estopped even when it is acting in its public capacity if it has received or accepted benefit from the transaction. *Deutsch*, 91 S.W.2d at 311–12.

## D. The Current Controversy

■ An independent school district is an agency of the state which carries out only governmental functions, and, consequently, is entitled to governmental immunity. *Braun v. Trustees of Victoria Indep. School Dist.*, 114 S.W.2d 947, 949–50 (Tex.Civ.App.1938, writ ref'd) (holding that Tex.Const.Ann. art. VII, § 1 (1955) establishes the matter of public education as a governmental function for all purposes).[5] AISD is not immune from suit, however, as the legislature has consented to suits against independent school districts. Tex. Educ.Code Ann. § 23.26(a) (1987) ("The trustees ... in the name of the school district may ... sue and be sued...."). The issue then is whether AISD is immune from liability from a claim based on promissory and equitable estoppel.

■ To support their position, the Dillards cite us to the supreme court's opinion in *Prasifka*. In *Prasifka* the court said that "a municipality may be estopped in those cases where justice requires its application, and there is no interference with the

Tort Claims Act § 101.025 revisor's note (1986). This statement is unfortunate because it wrongly implies that governmental immunity is limited only to "the state and its agencies" and does not encompass any "political subdivision of this state," as those terms are defined in the Act. Tex.Civ.Prac. & Rem.Code Ann. § 101.001(2) (Supp.1991) (*e.g.*, a county is "a political subdivision of this state."). What the revisor certainly meant to say is that one type of local governmental unit, *i.e.*, a municipality, does not *necessarily* have governmental immunity.

5. The supreme court's refusal of the application for writ of error in *Braun* impliedly overruled in part the court's opinion in *Hatcher v. State*, which previously held that school districts, like cities, do not enjoy immunity from suit. *Hatcher*, 125 Tex. 84, 81 S.W.2d 499, 500 (1935).

exercise of its governmental function. But such doctrine is applied with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Prasifka*, 450 S.W.2d at 836. We do not dispute this. This estoppel exception cannot be applied to AISD, however, because the exception is limited to municipalities. The supreme court in *Deutsch* clearly linked the use of estoppel against a governmental unit to the proprietary actions of a municipality. Because a school district has no proprietary functions, we conclude that estoppel cannot apply to AISD.[6]

We are aware that our holding that estoppel can apply only to governmental units that exercise proprietary functions, *i.e.,* municipalities, runs contrary to opinions of some of our sister courts of appeals. *See, e.g., Arrington v. County of Dallas*, 792 S.W.2d 468, 472 (Tex.App.1990, writ denied); *Clear Lake City Water Auth. v. Winograd*, 695 S.W.2d 632, 640 (Tex.App.1985, writ ref'd n.r.e.)[7]; *Teague Indep. School Dist. v. Mason*, 233 S.W.2d 176, 180 (Tex.Civ.App.1950, writ ref'd n.r. e.). Our research reveals that all of the supreme court cases addressing this issue, however, involve either municipalities or the existence of a contract, and we decline to deviate from the established rule immunizing a governmental unit other than a municipality from estoppel.

On rehearing, the Dillards argue that the supreme court's recent opinion in *Bowman v. Lumberton Independent School District* extends the *Prasifka* estoppel exception to independent school districts. *Bowman*, 801 S.W.2d 883 (Tex. 1990). We disagree. In *Bowman* the supreme court stated, "It is true that the general rule is that 'when a unit of government is exercising its governmental powers, it is not subject to estoppel,' subject to an exception that municipalities *and similar local units of government* 'may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions.'" *Bowman*, 801 S.W.2d at 888 (citing *Prasifka*, 450 S.W.2d at 836) (emphasis added). The court, however, did not hold that a school district was subject to the *Prasifka* exception, but rather that the school district was subject to estoppel because of the existence of a contract. We believe that the *Bowman* decision is an extension of the longstanding doctrine that the state is not immune from liability when it contracts. *See Fristoe*, 45 S.W. at 999.[8]

We decline to interpret *Bowman* as extending the *Prasifka* estoppel exception because we do not believe the supreme court has overruled its previous opinions in *Deutsch* and *Posnainsky*. Our understanding of the Texas common law of governmental immunity is that only municipali-

---

**6.** Even if the *Deutsch* exception referred to above were to apply to nonmunicipalities, it would not be applicable under the facts of this cause because AISD received no benefit from the Dillards's actions.

**7.** The First Court of Appeals, which issued the *Winograd* opinion, has stated that the estoppel exception applies to municipal corporations. *Farmer's Marine Copper Works, Inc. v. City of Galveston*, 757 S.W.2d 148, 152 (Tex.App.1988, no writ). Although we are aware that the supreme court in dicta has also defined the estoppel exception by reference to municipal corporations, the court's reference was contained in a quotation from Corpus Juris Secundum, which did not purport to use the term "municipal corporation" in the context of Texas jurisprudence. *See City of Corpus Christi v. Gregg*, 155 Tex. 537, 289 S.W.2d 746, 750 (1956) (quoting 31 C.J.S. Estoppel § 111–b (1942)). In the context of governmental immunity, we believe that the

word "municipal corporation" is a term of art properly limited to municipalities. *See* 2 Braden, The Constitution of the State of Texas: An Annotated and Comparative Analysis 672–64 (1977) (discussing the significance of the term "municipal corporation"); Tex.Loc.Gov't Code Ann. §§ 5.001–.005 (1988) (defining types of municipalities) and 5.904 (Supp.1991) (illustrating relationship of terms "municipal corporation," "municipality," "city," "town," and "village.").

**8.** The Dillards have not argued that their estoppel claims sound in contract such that the AISD cannot claim immunity from liability. We note, however, that estoppel does not create a contract when none existed before. *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex.1965). Although the result is indeed harsh, we do not read *Fristoe* and its progeny to allow the state to be estopped into a contract such that it consents to waive its immunity from liability.

ties possess both governmental and proprietary functions.[9,10] Because we believe that *Braun,* which states that an independent school district carries out only governmental functions, is still the law, we conclude that an independent school district is not a local unit of government similar to a municipality. Point of error 1 is overruled.

## II. ARTICLE I, SECTION 17 TAKING

 In their second point of error, the Dillards contend that the trial court erred in holding that: (1) governmental immunity barred their cause of action under article I, section 17 of the Texas Constitution; and (2) the Dillards's property was not "taken" as required by article I, section 17. Tex. Const.Ann. art. I, § 17 (1984). AISD does not dispute that article I, section 17 constitutes a waiver of governmental immunity for the taking, damaging, or destruction of property for public use. *Steele v. City of Houston,* 603 S.W.2d 786, 791 (Tex.1980).

The constitution states that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made." The Dillards do not allege that their property was "taken," but rather that it was "damaged" by AISD's adoption of the resolution authorizing negotiation for purchase or condemnation of the property, which allegedly rendered the land useless for other purposes and diminished its value.

 It is the settled rule that a direct physical invasion of property is not required under article I, section 17 to en-

title an owner to compensation. *DuPuy v. City of Waco,* 396 S.W.2d 103, 108 (Tex. 1965). However, the mere initiation of condemnation proceedings is but an incidental damage that is not compensable as a taking or damage even though it may interfere with the marketability of the property. *See City of Houston v. Biggers,* 380 S.W.2d 700, 704 (Tex.App.1964, writ ref'd n.r.e.), cert. denied, 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965), cited with approval in *City of Austin v. Teague,* 570 S.W.2d 389, 392 (Tex.1978). Point of error 2 is overruled.

## III. FRAUD

 In their third point of error, the Dillards claim the trial court erred in holding that governmental immunity barred their claim for fraud. At first glance, this point appears to lack merit. The state has immunity from liability unless that immunity is waived. *E.g., Missouri Pac.R.R.,* 453 S.W.2d at 813; *Walling,* Dallam at 525–26. The Dillards have failed to show any such waiver by the state. *See* Tort Claims Act § 101.057 (1986) (Act does not apply to intentional torts). However, there does exist a body of law regarding the acts of public servants that may account for the Dillards's belief that governmental immunity does not bar a claim for fraud.

 It has long been the law in Texas that "acts of officials of the state which are not *lawfully authorized* are not acts of the State, and an action against the officials, by one whose rights have been invad-

---

**9.** As a part of the so-called tort reform movement, the Texas Constitution was amended to allow the legislature to classify the functions of a municipality that are to be considered governmental and those that are proprietary. Tex. Const.Ann. art. XI, § 13 (Supp.1991); *see* Tort Claims Act § 101.0215 (Supp.1991) (defining governmental and proprietary functions of a municipality). The legislative history indicates that Senator Montford, a cosponsor of Tex.S.B. 287, 70th Leg., R.S. (1987), believed that the governmental/proprietary distinction applied only to municipalities. Tort Reform: Hearings on Tex.S.R.J. 15, S.B. 287, S.B. 288, S.B. 289, S.B. 290, and S.B. 329 Before the Senate Comm. on Economic Dev., 70th Leg., R.S. 42–44 (Mar. 2, 1987), reprinted in 2 Texas Tort Reform: Legislative History 1987, S–44 to S–46 (Burwell

ed. 1988). The addition of section 101.0215 of the Civil Practice and Remedies Code was accomplished by the enactment of Tex. S.B. 5, 70th Leg., 1st C.S. (1987), also sponsored by Senator Montford.

**10.** In *Posnainsky,* the supreme court characterized some of the City of Galveston's municipal functions as proprietary due to the city's "home rule" status. It is unclear, and we do not address the issue, whether municipalities that are not home-rule municipalities have any proprietary functions under the common law. In any event, the Texas Tort Claims Act does not make a distinction among types of municipalities in the Act's discussion of municipal liability. Tort Claims Act § 101.0215 (Supp.1991).

ed or violated by such acts and who seeks determination or protection of such rights, is not a suit within the rule of immunity of the State from suit." *Oxford v. Hill*, 558 S.W.2d 557, 560 (Tex.Civ.App.1977, writ ref'd) (emphasis original).[11] The Dillards cannot rely on this line of cases, however, because they have sued the school district itself, rather than the trustees in their individual capacities. *See Edinburg Consol. Indep. School. Dist. v. St. Paul Ins. Co.*, 783 S.W.2d 610, 612 (Tex.App.1989, writ denied).

There is case law, including cases from this Court, which states that actions of a governmental unit that are illegal, wrongful, or beyond statutory authority are not immunized by governmental immunity, and the suit is not one against the state.[12] We believe that much of the confusion in this area stems from a misinterpretation of two supreme court cases, *Director of the Department of Agriculture & Environment v. Printing Industries Association*, 600 S.W.2d 264 (Tex.1980), and *Texas Highway Commission v. Texas Association of Steel Importers, Inc.*, 372 S.W.2d 525 (Tex.1963).

*Printing Industries* was a suit against public servants, not a governmental unit, in which the court of civil appeals held that "the suit was maintainable as an action against the *state officials* acting outside their lawful authority, and that invasion of the rights of plaintiffs was alleged with sufficiency to maintain the suit." *Printing*

*Indus. Ass'n v. Director of the Dept. of Agric. & Env't*, 588 S.W.2d 849, 852 (Tex. Civ.App.1979), rev'd on other grounds, 600 S.W.2d 264 (Tex.1980) (emphasis added). The supreme court reversed the court of civil appeals on the issue of the interpretation of article XVI, section 21 of the Texas Constitution, not on the issue of governmental immunity. Tex.Const.Ann. art. XVI, § 21 (Supp.1991). In fact, the supreme court said the court of appeals correctly stated the law concerning a suit by an entity or person whose rights have been violated by the unlawful action of a public servant. *Printing Industries*, 600 S.W.2d at 265.

*Steel Importers* was a declaratory judgment action concerning an order of the State Highway Commission that required all materials used in highway construction to be manufactured in the United States. The supreme court held that the order violated the competitive bidding statute, 1933 Tex.Gen.Laws, 1st C.S., ch. 103, § 1, at 286 [Tex.Rev.Civ.Stat. 6674h, since amended]. Although only listed as "et al." in the opinions of both the supreme court and the court of civil appeals, a review of the record reveals that the members of the Highway Commission, Herbert C. Petry, Jr., C.F. Hawn, and Hal Woodward, as well as the state highway engineer, D.C. Greer, were sued individually in addition to the Commission itself. The court of civil appeals stated, "We believe that appellees acted beyond their statutory authority and

---

11. *See also State v. Lain*, 162 Tex. 549, 349 S.W.2d 579, 582 (1961); *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 840 (1958); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 712 (1945); *State v. Epperson*, 121 Tex. 80, 42 S.W.2d 228, 231 (1931); *Walsh v. University of Texas*, 169 S.W.2d 993, 993–94 (Tex.Civ.App. 1942, writ ref'd); *Adams v. Myers*, 721 S.W.2d 447, 449 (Tex.App.1986), aff'd in part, rev'd in part on other grounds, 728 S.W.2d 771 (Tex. 1987); *Bagg v. University of Tex. Medical Branch*, 726 S.W.2d 582, 584–585 & n. 2 (Tex. App.1987, writ ref'd n.r.e.); *University of Tex. Health Science Center v. Babb*, 646 S.W.2d 502, 504–05 (Tex.App.1982, no writ); *Terrell v. Middleton*, 187 S.W. 367, 369 (Tex.Civ.App.1916), writ ref'd and reh'g overruled per curiam, 108 Tex. 14, 191 S.W. 1138, 108 Tex. 14, 193 S.W. 139 (1917); *Imperial Sugar Co. v. Cabell*, 179 S.W. 83, 88–89 (Tex.Civ.App.1915, no writ); *Conley v. Daughters of the Republic*, 151 S.W.

877, 881 (Tex.Civ.App.1912), rev'd on other grounds, 106 Tex. 80, 156 S.W. 197 (1913).

12. *See Atchison, T. & S.F. Ry. v. Texas State Dep't of Highways & Pub. Transp.*, 783 S.W.2d 646, 647–48 (Tex.App.1989, no writ); *Battleship Texas Advisory Bd. v. Texas Dynamics, Inc.*, 737 S.W.2d 414, 417 (Tex.App.1987, writ dism'd w.o. j.); *Teacher Retirement Sys. v. Neill*, 563 S.W.2d 873, 874 (Tex.Civ.App.1978, writ ref'd n.r.e.); *Texas Liquor Control Bd. v. Bacon*, 443 S.W.2d 312, 317 (Tex.Civ.App.1969), rev'd on other grounds, 456 S.W.2d 891 (Tex.1970); *Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 443 S.W.2d 308, 310 (Tex.Civ.App.1969), rev'd on other grounds, 456 S.W.2d 891 (Tex.1970); *Allen v. State*, 410 S.W.2d 52, 54 (Tex.Civ.App. 1966, no writ); *Texas Liquor Control Bd. v. Diners' Club, Inc.*, 347 S.W.2d 763, 766 (Tex.Civ. App.1961, writ ref'd n.r.e.).

**598**

that the suit is not against the State as sovereign to impose liability or the performance of a contract." *Texas Ass'n of Steel Importers, Inc. v. Texas Highway Comm'n,* 364 S.W.2d 749, 752 (Tex.Civ. App.), aff'd, 372 S.W.2d 525 (Tex.1963). To the extent that the court of civil appeals was referring to the highway commissioners and engineer, its opinion is wholly consistent with State v. Lain, which held that unlike the state, public servants sued in their official capacity are not automatically entitled to the defense of governmental immunity. *Lain,* 162 Tex. 549, 349 S.W.2d 579, 582 (1961). The question was apparently not raised in the supreme court whether the Commission, as opposed to the commissioners and engineer, was entitled to a separate plea in abatement based on governmental immunity, and we do not read the supreme court's opinion in *Steel Importers* to overrule either: (1) the cases cited therein, *i.e., Lain,* 349 S.W.2d 579; *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709 (1945); and *State v. Epperson,* 121 Tex. 80, 42 S.W.2d 228 (1931); or (2) *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151 (1960), a case that also involved the highway commissioners and engineer.

■ After careful review of the case law, we believe that the better view is expressed in *Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582 (Tex.App. 1987, writ ref'd n.r.e.). The *Bagg* court held that when a person sues over the violation of his rights resulting from the unlawful acts of public servants, the plaintiff must bring the action against some individual in authority at the governmental unit and not against the governmental unit itself. *Id.* at 584–85 & n. 2. This result is dictated by common sense. If the governmental unit is entitled to governmental immunity, a suit against the governmental unit is a suit against the State of Texas. Litigants may not circumvent the admittedly harsh barrier of governmental immunity by simply suing an agency or political sub-

division of the state, rather than the state itself. Allowing suits directly against a governmental unit would result in the wholesale abrogation of the doctrine of governmental immunity, a policy decision beyond the purview of this Court.

■ Requiring a lawsuit against a public servant to be brought against the public servant personally is not a complete fiction.[13] The Texas cases are originally based on rulings of the United States Supreme Court, which stated the policy reasons as follows:

[T]he use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional.

*Ex parte Young,* 209 U.S. 123, 159, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908).

On a more practical level, requiring the suit to be brought against a public servant preserves the state's immunity from liability. A money judgment against a public servant may be indemnified by the state within limits set by the legislature, but this differs from a money judgment directly against the state or a subdivision thereof. *See* Tex.Civ.Prac. & Rem.Code Ann. §§ 102.001–.006 (tort claims payments by local governments), 104.001–.008 (state liability for conduct of public servants) (1986 & Supp.1991). Permitting a suit directly against a governmental unit that has acted "illegally, wrongfully, or beyond its statutory authority" would effectively gut the provisions of the Texas Tort Claims Act and the decisions of the supreme court interpreting the Act. We do not believe that this is the law, and, accordingly, we overrule point of error 3.

---

**13.** A public servant may not utilize the defense of governmental immunity merely based on the fact that he was sued in his official, rather than individual, capacity. *Lain,* 349 S.W.2d at 582. The capacity in which the public servant is sued may be relevant, however, to whether the state will defend and indemnify him. *See* Tex.Civ. Prac. & Rem.Code Ann. § 104.002 (Supp.1991) (state liability for conduct of public servants).

## IV. DUTY OF GOOD FAITH NEGOTIATION

The Dillards' final point of error asserts that the trial court erred in holding that governmental immunity barred their claim for breach of the duty of good faith negotiation. *See* Tex.Prop.Code Ann. § 21.012 (1984). We do not read section 21.012 to create a cause of action for failure to negotiate in good faith, nor is there a general common-law duty of good faith. *Federal Deposit Ins. Corp. v. Coleman,* 795 S.W.2d 706, 708–09 (Tex.1990). Point of error 4 is overruled.

The judgment of the trial court is affirmed.

GAMMAGE, J., not participating.