Liberty Mutual v. Sharp 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 





NO. 3-92-630-CV





LIBERTY MUTUAL INSURANCE COMPANY,



 APPELLANT


vs.





JOHN SHARP, COMPTROLLER OF THE PUBLIC ACCOUNTS OF THE STATE OF


 TEXAS, AND JAMES LYNAUGH, EXECUTIVE DIRECTOR OF THE TEXAS


DEPARTMENT OF CRIMINAL JUSTICE,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 91-0076, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 






 We withdraw the opinion of this Court dated November 10, 1993, and substitute
the following in its place.

 Appellant, Liberty Mutual Insurance Company, filed suit against appellees John
Sharp, Comptroller of Public Accounts, and James Lynaugh, Executive Director of the Texas
Department of Criminal Justice (TDCJ), in their official capacities. Appellees filed a plea to the
jurisdiction which the trial court granted, dismissing the suit with prejudice. We will affirm the
trial court's order.




BACKGROUND


 On April 28, 1988, TDCJ entered into a contract for the construction of a pre-engineered building system with Trio Metal Buildings, Inc. To comply with state law, Trio Metal
obtained payment and performance bonds from Liberty Mutual. See Act of May 20, 1977, 65th
Leg., R.S., ch. 809, § 1, art. 5160(A), 1977 Tex. Gen. Laws 2027, 2027 (Tex. Rev. Civ. Stat.
Ann. art. 5160, since amended). Trio Metal defaulted on the TDCJ contract, and Liberty Mutual
paid or offered to pay $507,782.37 in claims under Trio Metal's payment bond.

 At the time of its default, Trio Metal owed the State of Texas $100,279.59 in sales
taxes. TDCJ owed Trio Metal an outstanding payment on the contract of approximately
$300,000. Trio Metal subsequently filed bankruptcy. During the bankruptcy proceedings, the
bankruptcy court ordered that any outstanding payments on the TDCJ contract be placed in an
escrow account in favor of Liberty Mutual. Pursuant to this order, the Comptroller issued a
warrant payable to Trio Metal in the amount of approximately $200,000 and delivered the warrant
directly to Liberty Mutual. The Comptroller had offset Trio Metal's outstanding tax liability
against the amount due under the contract.

 In January 1991, Liberty Mutual filed suit to recover the $100,279.59 withheld by
the Comptroller. Liberty Mutual claimed that these sums were wrongfully and unlawfully held
by the TDCJ and the State. The pleadings expressly state that this suit was filed against both John
Sharp and James Lynaugh in their official capacities:



Defendant John Sharp is the Comptroller of the Public Accounts of the State of
Texas, is being sued in his official capacity as the Comptroller, and may be served
with process at 111 E. 17th Street, Austin, Texas. Defendant James Lynaugh is
the Executive Director of The Texas Department of Criminal Justice, is being sued
in his official capacity as Executive director, and may be served with process at the
Brown Oil Tool Building, Spur 59, Huntsville, Texas.



Additionally, plaintiff included in its petition the following:



JURISDICTION



Plaintiffs [sic] will have a Resolution to Sue presented to the 1991 Texas
Legislature when it convenes in January 1991.


2. Venue is appropriate in Travis County, Texas, as this suit is being brought
against officers and agents of the State of Texas in their official capacity as
representatives of State of Texas agencies.



In its request for relief, Liberty Mutual prays for judgment against "defendants" for monies
wrongfully appropriated and withheld. The trial court dismissed the suit for want of jurisdiction. 
In a single point of error, Liberty Mutual asserts that the trial court's dismissal was error because
the suit is not barred by the doctrine of governmental immunity.



GOVERNMENTAL IMMUNITY


 The doctrine of governmental immunity bars Liberty Mutual's claims against John
Sharp and James Lynaugh in their official capacities. This Court has previously held that a suit
against a state officer in his official capacity is a suit against the state. Pickell v. Brooks, 846
S.W.2d 421, 424-25 (Tex. App.--Austin 1992, writ denied) (citing Herring v. Houston Nat'l Exch.
Bank, 253 S.W. 813, 814-15 (Tex. 1923)). The doctrine of governmental immunity ensures that
the state cannot be sued without its permission. Id. at 424 (citing Dillard v. Austin Indep. Sch.
Dist., 806 S.W.2d 589, 592 (Tex. App.--Austin 1991, writ denied)); see also Missouri Pac. R.R.
v. Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970). (1) As this Court has previously
noted, despite abiding criticism of the justification for governmental immunity, the Texas Supreme
Court has declared that the waiver of governmental immunity is a matter properly addressed to
the legislature, not the courts. See, e.g., Pickell, 846 S.W.2d at 425; Dillard, 806 S.W.2d at 593
(citing Lowe v. Texas Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976)).

 Liberty Mutual argues that it may maintain this cause of action without legislative
or statutory authority because its rights have been violated by the unlawful acts of state officials. 
See Cobb v. Harrington, 190 S.W.2d 709 (Tex. 1945). However, Liberty Mutual does not sue
John Sharp and James Lynaugh in their individual capacities, but rather clearly asserts claims
against them in their official capacities, making this a suit against the state. Pickell, 846 S.W.2d
at 424-25. In Dillard, this Court recognized that though caselaw exists supporting the proposition
that unlawful acts of state officials are not acts of the State, reliance on this body of law requires
that the plaintiff sue the state official in his or her individual, rather than official, capacity. 
Dillard, 806 S.W.2d at 597. The result of such a suit would be a judgment against the individual
rather than against the State.

 When the purpose of a suit against an officer or agency of the State is to impose
liabilities on or enforce liabilities against the State, it is in effect a suit against the State, and
cannot be maintained without legislative consent. Griffin v. Hawn, 341 S.W.2d 151, 152-53 (Tex.
1960) ("Where the purpose of a proceeding against state officials is to control action of the State
or subject it to liability, the suit is against the State and cannot be maintained without the consent
of the Legislature."); San Antonio Indep. Sch. Dist. v. State Bd. of Educ., 108 S.W.2d 445, 448
(Tex. Civ. App.--San Antonio 1937, no writ). In its petition, Liberty Mutual requests that it be
paid money "wrongfully misappropriated" and asserts that the "[d]efendants will be unjustly
enriched if they are allowed to retain this money improperly retained." (2) The money is currently
held by the State, not by John Sharp or James Lynaugh individually. A request to recover money
from the State is a suit against the State, and cannot be maintained without legislative consent. 
Accordingly, we hold that the trial court properly dismissed the suit with prejudice for want of
jurisdiction. (3)

 Liberty Mutual also asserts that the appellees' plea to the jurisdiction was
procedurally flawed because: (1) Liberty Mutual was not given an opportunity to amend its
pleadings; (2) appellees failed to prove lack of jurisdiction by extrinsic evidence; and (3) the plea
was not properly verified. Because of the nature of subject-matter jurisdiction, Liberty Mutual's
claims are without merit.

 A court's jurisdiction is conferred by the constitution and the statutes; a court
without jurisdiction cannot render a valid judgment. City of Beaumont v. West, 484 S.W.2d 789,
791 (Tex. Civ. App.--Beaumont 1972, writ ref'd n.r.e.) (citing Nevitt v. Wilson, 285 S.W. 1079
(Tex. 1926)). Want of subject-matter jurisdiction arrests a cause at any stage in the proceedings. 
Southwestern Bell Tel. Co. v. City of Kountze, 543 S.W.2d 871, 873 (Tex. Civ. App.--Beaumont
1976, no writ). If at any time during the trial court's proceeding it becomes apparent that the
court has no lawful authority to adjudicate the issues presented, the court must dismiss the case. 
City of Beaumont, 484 S.W.2d at 791 (citing Snyder v. Wiley Porter, 59 Tex. 448 (1883),
overruled on other grounds by Ablowich v. Greenville Nat'l Bank, 67 S.W. 881 (Tex. 1902)). 
Liberty Mutual suggests that it should have been given an opportunity to amend its pleadings
before the case was dismissed. This argument is not persuasive when the lack of subject-matter
jurisdiction can only be cured by the opposing party's consent to be sued. The purpose of special
exceptions is to inform the opposing party of a defect in its pleadings so that the party may cure
the defect by amendment. Cameron v. University of Houston, 598 S.W.2d 344, 345 (Tex.
App.--Houston [14th Dist.] 1980, writ ref'd n.r.e.). The trial court dismissed this suit for lack of
jurisdiction, not on the merits of Liberty Mutual's case. Because we have held that this suit is
barred by governmental immunity, there is nothing the plaintiff could have included in its petition
that would have conferred jurisdiction on the trial court. 

 Liberty Mutual also contends that the appellees' plea to the jurisdiction was
unsupported by evidence. However, the appellees were not required to present any evidence
regarding the legislature's waiver of governmental immunity. Liberty Mutual's pleadings did not
allege adequate grounds for jurisdiction. In deciding whether to grant a plea to the jurisdiction,
the trial court must look solely to the allegations in the petition. Texas Ass'n of Business v. Texas
Air Control Bd., 840 S.W.2d at 446. Liberty Mutual's claim that appellees failed to prove that
the legislature did not consent to be sued is misplaced; it is its burden to plead and prove that
governmental immunity from suit has been waived. Brownsville Navigation, 453 S.W.2d at 813-14; Walsh v. University of Tex., 169 S.W.2d 993, 993-94 (Tex. Civ. App.--El Paso 1942, writ
ref'd).

 We do not address Liberty Mutual's contention that the plea was not verified. This
objection was not raised at the trial-court level, and appellant may not raise the issue for the first
time on appeal. See Builders Bargain Ctr., Inc. v. National Gypsum Co., 398 S.W.2d 804, 805
(Tex. Civ. App.--San Antonio 1966, no writ).

 Having concluded that the trial court properly dismissed this suit for want of
jurisdiction, we overrule Liberty Mutual's point of error. We have considered Liberty Mutual's
motion for rehearing, and it is also overruled. Accordingly, we affirm the trial court's order
dismissing the cause with prejudice for want of jurisdiction.



 
 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: March 16, 1994 

Publish

1.   In recognition of the requirement that the State give its consent to be sued, plaintiffs
in this case indicated in their pleadings their intent to seek a legislative waiver of
governmental immunity. 
2.   We note that the government has the right to set off taxes owed by a defaulting
contractor against a retainage such as the one at issue in this case when the surety makes
its claim to that retainage under a payment bond. This is because in that situation, the
surety's claim to the retainage is derivative of that of the defaulting contractor. See
United States v. Munsey Trust Co., 332 U.S. 234 (1947) (addressing whether percentages
retained by the government pursuant to contract are subject to set off despite the claims of a
surety who has paid laborers and materialmen); Aetna Casualty & Sur. Co. v. United States,
435 F.2d 1082, 1984 (5th Cir. 1970) (noting that the surety's claim to retainages under a
payment bond is subject to set off for the defaulting contractor's taxes). By contrast, the
government does not have a right to set off against a surety that completes performance for the
defaulting contractor under a performance bond. Id.; Trinity Universal Ins. Co. v. United
States, 382 F.2d 317, 321 (5th Cir. 1967), cert. denied, 390 U.S. 906 (1968). In that case,
the surety is a subrogee of the state rather than a creditor, and its claim to the retainage is not
burdened by the taxes owed by the defaulting contractor. Id. at 320. Although these federal
cases involve the Miller Act, 40 U.S.C. §§ 270a-270d (1988), Liberty Mutual argues that they
apply to cases involving the state law because it was patterned after the Miller Act. We accept
this contention for the purposes of this appeal. When determining jurisdiction, the trial court
considers only the allegations in the plaintiff's pleadings. Texas Ass'n of Business v. Texas Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). In its petition, Liberty Mutual alleges that its
right to the retainage arises from its having paid or offered to pay $507,782.37 in claims under
the payment bond. Because Liberty Mutual alleges a right to the retainage arising under its
payment bond, a set off would be proper. Munsey Trust, 332 U.S. at 244; Aetna Casualty &
Sur., 435 F.2d at 1084; Trinity Universal, 382 F.2d at 320.
3.   Because we hold that Liberty Mutual cannot maintain this suit based on a theory of
improper action by state officials, we do not address its contention that section 112.108 of
the Tax Code does not bar this suit. See Tex. Tax Code Ann. § 112.108 (West 1992).