NUMBER 13-05-126-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

CITY OF WESLACO, TEXAS, ET AL.,                         Appellants,

 

                                           v.

 

CARL
L. BORNE, ET AL.,                                          Appellees.

 

 

 

                  On appeal from the 206th
District Court

                           of Hidalgo
County, Texas.

 

 

 

                     MEMORANDUM OPINION[1]

 

                Before Justices Yañez,
Castillo, and Garza

                  Memorandum Opinion by Justice Castillo

 








Carl Borne and other
current or former residents of the Lake View Senior Mobile Home Park (the
"Residents") sued the City of Weslaco ("the City"), the
Economic Development Corporation of Weslaco ("the Corporation"),[2]
and the Weslaco Development Committee ("the Committee")[3]
for (1) common law fraud, (2) fraud in a real estate transaction, (3) breach of
contract, (4) negligent misrepresentation, (5) violations of chapter 94 of the
Texas Property Code, and (6) DTPA violations.[4]  The trial court denied motions to dismiss and
pleas to the jurisdiction filed by the City, the Corporation, and the Committee.  The City, the Corporation, and the Committee
now appeal from that order.[5]  We dismiss for want of jurisdiction.

I.  Factual Background













In 1999, the City
entered into an agreement with the Texas State Parks and Wildlife Department
("PWD") in which the two agreed to commit two million dollars to
develop a World Birding Center.[6]  In May 2000, the Committee purchased Lake
View Senior Mobile Home Park ("the Park").  According to the Residents' last pleading,
the PWD informed the City, the Corporation, and the Committee, (collectively
"the appellants") that it would only accept the Park if it was
without any occupants.  The Residents
further assert that after an initial attempt to oust them in June 2000, the
committee sold the Park to the City in December 31, 2000.  The City maintains that it bought the Park to
further the development of the Birding Center. 
Thereafter, the Committee acted as a management agent for the City
regarding the Park, until the Committee dissolved in May 2002, at which time
the Corporation took over the management of the Park.  The Residents maintain that subsequent to the
City's purchase of the Park, Hernan Gonzalez, executive director of the
Committee, spoke with the Residents in October 2000, and promised that they
could remain in the Park.  The Residents
maintain that they also received a letter from Gonzalez stating that the
Residents would not be forced to relocate. 
The Residents state that the letter was posted at the park by the City
and/or the Committee or the Corporation and it remained there until May
2003.  The Residents maintain that the
Mayor subsequently represented in an article and in a speech directly to the
Residents that they would never be asked to leave the Park as long as they were
able to care for themselves.  The
Residents maintain that later, on May 20, 2003, the Mayor announced that the
Park Residents who were not permanent residents would be forced to leave.  In October 2003, the City entered a second
agreement with the PWD, which gave the City the option of transferring the Park
to the PWD as part of the plan to develop the World Birding Center.  The City would receive a credit against the
two million dollars it pledged to the project in exchange for the transfer of
the Park.  The Residents maintain that
the transfer was contingent upon the property being free of occupants. 

The Residents brought
suit against the appellants.  The
appellants assert that the Residents had no written leases with them, nor with
any previous owner of the Park.  At the
time of the suit, at the time of filing the plea to the jurisdiction, and even
at the time the trial court denied the plea to the jurisdiction, neither City
nor the PWD had initiated eviction proceedings against the Residents, and the
City had not transferred the Park to the PWD. 
The Residents maintain that the City had communicated to the Residents
that it intended to transfer the Park to the PWD and that the Mayor directly
informed some Residents about the City's intention to breach alleged promises
regarding the Residents' ability to continue living at the Park.[7]


II.  Procedural Background








The City filed special
exceptions to the Residents' pleadings based on (1) the Residents seeking legal
damages against the City for fraud, an intentional tort as to  which the City maintains it is immune, (2)
the Residents' seeking legal damages against the City for misrepresentation,
another intentional tort as to which the City maintains it is immune, (3) the
Residents seeking legal damages against the City for alleged violations of the
DTPA, as to which the City has not consented to suit, (4) the Residents seeking
legal damages against the City for negligence, (5) the Residents' failure to
satisfy notice requirements of the Texas Tort Claims Act, (6) the Residents'
failure to plead and show that each Resident has suffered damages in excess of
the minimum jurisdictional limit for the trial court, and (7) the Residents'
failure to allege that all applicable notice requirements of the DTPA have been
satisfied.  








The City filed its
first plea to the jurisdiction on April 16, 2004, asserting that (1) the
Residents' request for injunctive relief was premature since the controversy
lacks "ripeness," and (2) the justice courts have exclusive
jurisdiction over forcible entry and detainer proceedings.  On May 4, 2004, the City filed its second
motion to dismiss and plea to the jurisdiction, in which it stated (1) the City
maintains its immunity from intentional torts under the Texas Tort Claims Act,
and therefore, the trial court lacks jurisdiction to hear those claims, (2) the
Residents failed to plead facts demonstrating their claim for negligent
misrepresentation falls within one or more of the statutory waivers outlined in
the act, (3) the trial court was without jurisdiction to hear the Residents'
claims for breach of contract as the City is entitled to immunity as to those
claims, (4) the actions of the City constitute governmental functions as to
which the City maintains its immunity except as waived by the tort claims act,
(5) the Residents failed to plead how all applicable notice requirements have
been met, (6) the trial court is without jurisdiction as the controversy lacks
"ripeness," and (7) the trial court is without jurisdiction to hear
the Residents' cause of action as it is a landlord-tenant dispute over
possession of the premises at issue.  By
way of their First Joinder in City of Weslaco's Pleas, Motions/Pleas,
Supplemental Motions/Pleas and Reply, the Committee and the Corporation joined
in the City's special exceptions and pleas to the jurisdiction.  

The trial court denied
the motions to dismiss and pleas to the jurisdiction filed by the City, the
Corporation, and the Committee.[8]


III.  Issues Presented








By eight issues, the
City, the Committee and the Corporation ask (1) whether the trial court erred
in denying their pleas to the jurisdiction as to the Residents' intentional
tort claims, (2) whether the trial court erred in denying the pleas to the
jurisdiction as to the Residents' negligent misrepresentation claims, (3)
whether the trial court erred in denying the pleas to the jurisdiction as to
the Residents' breach of contract claims, (4) whether the trial court erred in
denying the pleas to the jurisdiction as to the Residents' claims for violation
of Chapter 94 of the Texas Property Code, (5) whether sovereign immunity bars
claims based upon the DTPA, (6) whether the trial court erred in denying pleas
to the jurisdiction based on the Residents' failure to properly plead and prove
compliance with the notice requirements of the Texas Tort Claims Act, (7)
whether the Residents' claims are ripe, and (8) whether the Hidalgo district
court has jurisdiction as to claims based on the landlord-tenant claims over
possession of the premises.  

IV. Standard of Review








This appeal is strictly limited to our review of the
trial court's ruling on the plea to the jurisdiction.  Tex.
Civ. Prac. & Rem. Code Ann. '
51.014(a)(8) (Vernon Supp. 2004-05).  A plea to
the jurisdiction is the vehicle by which a party contests the trial court's
authority to determine the subject matter of the cause of action.  State v. Benavides, 772 S.W.2d 271,
273 (Tex. App.BCorpus Christi 1989,
writ denied).  The plaintiff bears the
burden of alleging facts affirmatively demonstrating the trial court's
jurisdiction to hear a case.  Tex.
Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993); Mission Consol. Indep. Sch. Dist. v. Flores, 39 S.W.3d 674, 676
(Tex. App.BCorpus Christi 2001,
no pet.).  Whether a pleader has alleged
facts that affirmatively demonstrate a trial court's subject matter
jurisdiction is a question of law reviewed de novo.  Tex. Dep't of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 226 (Tex. 2004). 
Likewise, whether undisputed evidence of jurisdictional facts
establishes a trial court's jurisdiction is also a question of law.  Id.  To
determine whether the plaintiff has affirmatively demonstrated the court's
jurisdiction to hear the case, we consider the facts alleged by the plaintiff
and, to the extent it is relevant to the jurisdictional issue, the evidence
submitted by the parties.  Texas
Natural Res. Conservation Comm'n v. White, 46 S.W.3d 864, 868 (Tex.
2001).  If a plaintiff pleads facts that
affirmatively demonstrate an absence of jurisdiction and such defect is
incurable, immediate dismissal of the case is proper.  Peek v. Equipment Service Co., 779 S.W.2d
802, 804-05 (Tex. 1989); City of Austin v. L.S. Ranch, 970 S.W.2d 750,
753 (Tex. App.BAustin 1998, no
pet.).  However, the mere failure of a
petition to state a cause of action does not show a want of jurisdiction in the
court.  Bybee v. Fireman's Fund Ins.
Co., 331 S.W.2d 910, 917 (1960).  If
the plaintiff's pleadings are insufficient to demonstrate the court's
jurisdiction, but do not affirmatively show incurable defects in jurisdiction,
the proper remedy is to allow the plaintiff an opportunity to amend before
dismissing.  County of Cameron v.
Brown, 80 S.W.3d 549, 554‑55 (Tex. 2002); Peek, 779 S.W.2d at
804-05.  








Like the trial court, we must construe the pleadings
in the plaintiff's favor and look to the pleader's intent.  Brown, 80 S.W.3d at 554-55.  Our task is not to determine the merits of the
case but rather to examine the petition, taking as true the facts pled, and
determine whether those facts support jurisdiction in the trial court.  Baston v. City of Port Isabel, 49
S.W.3d 425, 427-28 (Tex. App.BCorpus Christi 2001,
pet. denied).

V.  Jurisdiction

Our initial inquiry is
always whether we have jurisdiction over an appeal.  Garcia v. Comm'rs Court of Cameron County,
101 S.W.3d 778, 779 (Tex. App.BCorpus Christi 2003,
no pet.) (citing Tex. Air Control Bd., 852 S.W.2d at
443).  We are obligated to determine, sua
sponte, our own jurisdiction.  Garcia,
101 S.W.3d at 779 (citing N.Y. Underwriters Ins. Co. v. Sanchez,
799 S.W.2d 677, 678 (Tex. 1990) (per curiam)).  Jurisdiction of a court is never
presumed.  Garcia, 101 S.W.3d
at 783.  Our jurisdiction is
established exclusively by constitutional and statutory enactments.  Id. at 784; see Tex. Civ. Prac. & Rem. Code Ann. ' 51.014 (Vernon Supp.
2004-05). 

A.  Interlocutory Appeal

The Texas Civil
Practice and Remedies Code grants us jurisdiction to hear an interlocutory
appeal from an order granting or denying a plea to the jurisdiction by a
governmental unit.  See Tex. Civ.
Prac. & Rem. Code
Ann. ' 51.014(a)(8) (Vernon
Supp. 2004‑05).  Governmental
immunity extends to all agencies, political subdivisions, and other
institutions which are derived from the State Constitution and laws.  See Dillard v. Austin Ind. Sch. Dist.,
806 S.W.2d 589, 593 (Tex. App.BAustin 1991, writ
denied.).[9]








B.  Ripeness of the Residents' Claims








In conjunction with
jurisdiction, we consider the appellant's assertion that the Residents' claims
are not ripe for review.  The entirety of
the Residents' suit relies upon the possibility that the City will ask all or
some of the Residents to vacate the Park. 
To show that the controversy at issue is ripe, the Residents assert that
they face more than a hypothetical injury. 
The Residents allege that: (1) in October 2000, Gonzalez, executive
director of the Committee, promised the Residents that they could remain in the
Park, (2) the Residents received a letter from Gonzalez stating the same, (3)
one of the appellants posted the letter at the Park and it remained there until
May 2003, (4) the Mayor subsequently represented in an article and in a speech
that the Residents would never be asked to leave the Park as long as they were
able to care for themselves, (5) on May 20, 2003, the Mayor announced that the
Park Residents who were not permanent would be forced to leave, (6) the
transfer of the Park from the City to the PWD is contingent upon the property
being free of occupants, (7) the City has communicated to the Residents that it
intends to transfer the Park to the PWD, (8) the Mayor directly informed some
Residents about the City's intention to breach alleged promises regarding the
Residents' ability to continue living at the Park, and (9) the appellants have
not retracted their statements that they intend to remove the Residents from
the premises.  The Residents believe
these alleged actions show that the City has threatened to "breach its
agreements,[10]
renege on its promises, and kick the [Residents] off the property."

On appeal, the
appellants maintain that the Residents' case is based upon hypothetical facts
and events that have not come to pass. 
Asserting that this case is not ripe for consideration, they point out
that at this time, the City has not transferred the Park to the PWD and neither
the City nor the PWD have initiated eviction proceedings against the
Residents.  The Commitee and the
Corporation point out and the Residents acknowledge that, subsequent to the
Mayor's announcement[11]
that the Residents would have to leave, the City has taken the position that
the announcement may not have been an official statement of the City regarding
its intentions with respect to the Park. 
The Committee and the Corporation state that the case at issue is based
entirely on what might happen to the Residents at some point in the future,
that the case is not ripe, and that the case should be dismissed. 








It is fundamental that
a court has no jurisdiction to render an advisory opinion on a controversy that
is not yet ripe.  See Patterson
v. Planned Parenthood, 971 S.W.2d 439, 442-43 (Tex. 1998); Camarena v.
Tex. Employment Comm'n, 754 S.W.2d 149, 151 (Tex. 1988).  Ripeness, like standing, is a threshold issue
that implicates subject matter jurisdiction, and like standing, emphasizes the
need for a concrete injury for a justiciable claim to be presented.  Patterson, 971 S.W.2d at 442.  The ripeness doctrine avoids premature
adjudication on a hypothetical set of facts. 
Id. at 444.  At the
time a lawsuit is filed, ripeness asks whether the facts have developed
sufficiently so that an injury has occurred or is likely to occur, rather than
being contingent or remote.  Id.
at 442 (citation omitted).  An issue
is ripe when it presents a fully developed controversy.  Id. 
Ripeness thus focuses on whether the case involves "uncertain or
contingent future events that may not occur as anticipated, or indeed may not
occur at all."  Id. (citation
omitted).








When we consider the
ripeness of a suit, we look to the time the suit was filed. Patterson, 971
S.W.2d at 442.  It is obvious from the
Residents' assertions that the City had not made a final decision as to whether
it would transfer the property to the PWD, and further, if it did decide to
transfer the property, (1) how much of the property would be transferred, (2)
if not all the property would be transferred,[12]
then which Residents would be displaced, and (3) when the property would be
transferred.  Accordingly, we cannot, on
this record, determine (1) if any of the Residents will actually be displaced,
or (2) who the allegedly injured parties will be if the City does in fact move
to displace any of the Residents.  The
answers to these questions are contingent upon the City's decision whether to
transfer all or part of the property to the PWD and the conditions, if any, of
such transfer.  See id.  The Residents have not presented the trial
court with a fully developed controversy. 
Id.  We conclude that we do
not have jurisdiction to render an advisory opinion on a controversy that is
not yet ripe.  See Patterson, 971
S.W.2d at 442-43; Camarena, 754 S.W.2d at 151.  We sustain the City, the Corporation, and the
Committee's seventh issue on appeal.  

VI.  Conclusion

We dismiss for want of
jurisdiction.  

 

ERRLINDA CASTILLO

Justice

 

 

 

Memorandum Opinion delivered and filed

this the 22nd day of August, 2005.

 











[1] See Tex.
R. App. P. 47.1, 47.4. 





[2] The Economic Development
Corporation of Weslaco was created as a non-profit corporation under the
Development Corporation Act of 1979, by the City of Weslaco and pursuant to a
resolution passed by the City Commission and Mayor in September 1990.





[3] Weslaco Development Committee,
Inc. was incorporated on February 17, 1960 under the Texas Non-Profit
Corporation Act, its purpose being to promote "orderly Commercial and
Industrial Development of the City of Weslaco, and community surrounding
it."  The Committee dissolved in May
2002.





[4] See Tex.
Bus. & Com. Code
Ann. '' 17.01-.854 (Vernon 2002 &
Supp. 2004-05).  The Residents' petition
does not state specifically which sections of the DTPA it relies upon.





[5] The Corporation and the Committee
filed one joint brief on appeal and the City filed its appellate brief
separately.  Though two briefs were
filed, the points on appeal in each are identical.





[6] According to the Residents' fourth
amended petition and last live pleading, the PWD owns 45 acres adjacent to the
Park.





[7] The Residents acknowledge that,
subsequent to this announcement, the City took the position that the
announcement may not have been an official statement of the City regarding its
intentions with respect to the Park.





[8] The order stated:

 

The Court, having considered by
submission the following motions: 

1. Defendant City of Weslaco's Plea
to the Jurisdiction;

2. Defendant City of Weslaco's
Second Motion to Dismiss/Plea to the Jurisdiction;

3. Defendant Economic Development
Corporation of Weslaco, Inc.'s Motion to Dismiss for Lack of Jurisdiction/Plea
to the Jurisdiction;

4. Defendant City of Weslaco's
Supplemental Motion to Dismiss/Plea to the Jurisdiction;

5. Defendants', the Economic
Development Corporation of Weslaco, Inc. Joinder in City of Weslaco's Plea to
the Jurisdiction and Second Motion to Dismiss/Plea to the Jurisdiction;

6. Defendant's, The Economic
Development Corporation of Weslaco, Inc.'s Second Joinder in City of Weslaco's
Reply to Response to Plea to the Jurisdiction and Supplemental Motion to
Dismiss/Plea to the Jurisdiction; and 

7. Defendant's Weslaco Development
Committee, Inc.'s First Joinder in City of Weslaco's Pleas, Motions/Pleas,
Supplemental Motions/Pleas and Reply to Dismiss and Pleas to Jurisdiction and
Second Motion to Dismiss and Plea to Jurisdiction and any responses and
evidence with regard thereto, hereby DENIES the motions in all respects.

Signed and entered this the 17th day of February 2005. [Signed by the
Judge presiding.]





[9] The City is such a governmental
unit.  See Tex. Civ.
Prac. & Rem. Code
Ann. ' 101.001(3)(B) (Vernon 2005).  We do not reach the issue of whether the
Committee and Corporation are governmental entities as we conclude that we do
not have jurisdiction over this case.  See
Tex. R. App. P. 47.1.  Our jurisdiction extends no further than that
of the court from which the appeal is taken. 
Pearson v. State, 315 S.W.2d 935, 938 (Tex. 1958); Nabejas
v. Tex. Dep't of Pub. Safety, 972 S.W.2d 875, 876 (Tex. App.BCorpus Christi 1998, no pet.).  We conclude that the trial court did not have
jurisdiction over this case, thus neither do we have jurisdiction over the
matter on appeal.  





[10] Again, the appellants maintain
that the Residents have no leases with the current or any of the former owners
of the Park.





[11] The Residents maintain "on
information and belief" that the announcement came when the Mayor
"emerged from a closed session City Commission meeting and announced that
the [Residents] who were not 'permanent' would be forced to leave."





[12] The Residents' petition asserts
that the PWD gave the City the choice of transferring either all or part of the
Park to the PWD, so long as any property transferred be free of occupants.