**CANUTILLO INDEPENDENT SCHOOL DISTRICT, Appellant,**

v.

**Thomas OLIVARES, Appellee.**

No. 08–95–00056–CV.

Court of Appeals of Texas,
El Paso.

Feb. 29, 1996.

Rehearing Overruled March 27, 1996.

Henry C. Hosford, Baskind, Samaniego & Hosford, P.C., El Paso, for Appellant.

James F. Scherr, James B. Kennedy, Scherr & Legate, P.C., El Paso, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

## OPINION

CHEW, Justice.

Appellant Canutillo Independent School District appeals from an adverse jury verdict in a retaliatory termination case. Appellee Thomas Olivares alleged that the school district terminated him because he filed several Worker's Compensation claims. The jury found for Olivares and awarded him $200,000 in damages. We will modify the judgment and affirm as modified.

From March 1988 until April 1993, Appellee Thomas Olivares worked as a grounds keeper and custodian for Appellant Canutillo Independent School District ("CISD"). Olivares suffered injuries on the job on October 24, 1989, September 18, 1990, and November 19, 1992. He also claimed aggravation of an existing injury in March 1993. After each of his injuries, Olivares filed for Worker's Compensation. Between January and March 1993, Olivares received four written warnings for various insufficiencies in his job performance. On March 31, 1993, Olivares's supervisor recommended that CISD terminate him and on April 14, 1993, CISD gave Olivares written notice of termination. Olivares filed suit against CISD on April 21, 1993, alleging retaliatory termination in violation of Section 8307c of the Worker's Compensation Act, now recodified as TEX.LAB.CODE ANN. § 451.001 et seq. (Vernon Pamphlet 1996). The jury found that CISD had wrongfully terminated Olivares and awarded him $200,000 in damages.

In its first point of error, CISD argues that the trial court erred in entering judgment against it because school districts enjoy sovereign immunity from liability for retaliatory termination. In its second point, CISD asserts that even if sovereign immunity for retaliatory termination is waived, the Texas

Tort Claims Act limits CISD's liability for damages to $100,000. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.023 (Vernon 1986 and Supp.1996). Our determinations on these points are interrelated, so we will discuss them together.

■ Section 8307c of the Worker's Compensation Act, now recodified as TEX.LAB. CODE ANN. § 451.001 (the "Anti–Retaliation Law"), made it unlawful to:

> [D]ischarge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding. TEX.REV.CIV.STAT.ANN. art. 8307c (Vernon Pamphlet 1990).

An independent school district, however, is an agency of the state which carries out only governmental functions, and, consequently, is entitled to governmental immunity. *Dillard v. Austin I.S.D.,* 806 S.W.2d 589, 594 (Tex. App.—Austin 1991, writ denied), *citing Braun v. Trustees of Victoria I.S.D.,* 114 S.W.2d 947, 949–50 (Tex.Civ.App.1938, writ ref'd) (holding that TEX.CONST.ANN. art. VII, sec. 1 (1955) establishes the matter of public education as a governmental function for all purposes). A school district is generally immune from liability for its governmental actions, unless the Legislature specifically waives the immunity. *See Toungate v. Bastrop Indep. School District,* 842 S.W.2d 823, 828 (Tex.App.—Austin 1992, no writ). Waiver of sovereign immunity is a matter addressed to the Legislature, not to the courts. *City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995); *Guillory v. Port of Houston Auth.,* 845 S.W.2d 812, 813 (Tex.), *cert. denied,* —— U.S. ——, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993). The Legislature must waive immunity in clear and unambiguous language. *City of LaPorte,* 898 S.W.2d at 291.

■ In 1989, the Legislature adopted application of the Anti–Retaliation Law, then found at Article 8307c, to governmental enti-

ties. This section has been recodified without substantive change and is now found at TEX.LAB.CODE ANN §§ 504.002 and 504.003 as follows:

(a) The following provisions ... apply to and are included in this chapter except to the extent that they are inconsistent with this chapter:

. . . . .

(8) Chapter 451 [the recodified 8307c Anti–Retaliation Law].

(b) For the purpose of applying the provisions listed by Subsection (a) to this chapter, "employer" means "political subdivision."

(c) Neither this chapter nor [the Workers' Compensation Act] authorizes a cause of action or damages against a political subdivision or an employee of a political subdivision beyond the actions and damages authorized by [the Tort Claims Act]. TEX. LAB.CODE ANN. § 504.002 (Vernon Pamphlet 1996).

. . . . .

**Election Of Remedies.** A person may not bring an action for wrongful discharge under both [the Anti–Retaliation Law] and [the Whistleblower Act]. TEX.LAB.CODE ANN. § 504.003.

As noted above, the recodification of the Labor Code was intended by the Legislature to be "without substantive change." TEX. LAB.CODE ANN. § 1.001. Although Olivares was terminated in 1993, prior to recodification, the applicable provisions remain substantively identical.

In *City of LaPorte,* the Texas Supreme Court found that the language of Sections 504.002 and 504.003 indicate a clear intent on the part of the Legislature to waive sovereign immunity for retaliatory termination causes of action. *City of LaPorte,* 898 S.W.2d at 298. The Supreme Court, noting that the statute requires an election between

an action for a violation of the Anti–Retaliation Law and an action for the Whistleblower Act, reasoned:

Since immunity has clearly been waived for the latter statute, ... the requirement of an election suggests that immunity is also waived for the former. ... The Anti–Retaliation Law and the Whistleblower Act are not, of course, coextensive, but to the extent they might both apply in a situation, it would make little sense to require an employee to elect between an action barred by immunity and one not barred.

. . . . .

This election-of-remedies provision ... persuades us, in the end, that the Legislature must have intended to waive political subdivisions' immunity for liability imposed by the Anti–Retaliation Law. *Id.*

The Supreme Court concluded that the Legislature intended to waive immunity from liability for retaliatory termination causes of action subject to the actual damages cap found in TEX.CIV.PRAC. & REM.CODE ANN. § 101.023. *City of LaPorte,* 898 S.W.2d at 299; *see also, Kuhl v. City of Garland,* 910 S.W.2d 929, 931 (Tex.1995).[1]

Section 101.023 provides:

(a) Liability of the state government under this chapter is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,-000 for each single occurrence for injury to or destruction of property.

(b) Except as provided by Subsection (c), liability of a unit of local government under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,-000 for each single occurrence for injury to or destruction of property.

---

1. Although the language of TEX.LAB.CODE ANN. § 504.002 stating that the section does not authorize "a cause of action or damages ... beyond the actions and damages" authorized by the Tort Claims Act would seem to indicate that retaliatory discharge is still limited by TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 to actions arising out of the use of tangible property or a motorized vehicle (or in the case of a school district, limited to the use of a motorized vehicle. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 101.051) the Supreme Court faced that issue squarely in *Kuhl* and implicitly found that the damages limitations found in TEX. CIV.PRAC. & REM.CODE ANN. § 101 et seq. are the only immunities not waived. *See Kuhl,* 910 S.W.2d at 931.

(c) Liability of a municipality under this chapter is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

(d) Except as provided by Section 78.001, liability of a volunteer fire department under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property. Tex. Civ.Prac. & Rem.Code Ann. § 101.023.

Thus, CISD is not immune from Olivares's claims, but its liability for damages to Olivares is limited.

Olivares asserts that he should nevertheless recover all of the $200,000 awarded by the jury for two reasons. First, he argues CISD waived its right to assert the damage cap on appeal because it failed to prove that it is a school district. Second, he alleges that the school district is a "municipality." Because damages recoverable against a municipality are limited to $250,000 instead of $100,000, Olivares argues that he should recover all of the $200,000 judgment.

■ With regard to Olivares's first argument, it is well established that governmental entities litigate as any other party in Texas courts and must observe the laws and rules governing pleadings and proof. *Davis v. City of San Antonio*, 752 S.W.2d 518, 519 (Tex.1988). The Rules of Civil Procedure require that a party shall affirmatively set forth any matter constituting an avoidance or affirmative defense. Tex.R.Civ.P. 94. Immunities are affirmative defenses. *Villarreal v. Martinez*, 834 S.W.2d 450, 452 (Tex.App.— Corpus Christi 1992, no writ). Section 101.001 of the Tort Claims Act includes school districts as governmental entities subject to the Act. Tex.Civ.Prac. & Rem.Code Ann. § 101.001(2)(B) (Vernon Supp.1996). Thus, if CISD pleaded and proved that it is a school district, it necessarily proved that the Tort Claims Act applies to it and it is entitled to limit its liability for damages pursuant to Tex.Civ.Prac. & Rem.Code Ann. § 101.023.

CISD did plead the affirmative defense of sovereign or governmental immunity based on its standing as a school district. There is ample evidence in the record showing CISD is a school district. Robert Mendoza, Assistant Superintendent for Administration and Personnel of CISD, wrote the letter terminating Olivares on "Canutillo Independent School District" stationery. Wilson Knapp testified that he had been an assistant superintendent, and then the superintendent, of the "Canutillo Independent School District" for ten years. Knapp described CISD's school board and its functions according to state law applicable to school districts and their boards. David Durda, President of CISD's school board, testified that CISD's school board has to comply with the Open Meetings Act because the Act applies to school districts and their boards. Christel Sparks, an adjuster for the firm that handles worker's compensation claims for CISD, testified that CISD's insurance is set up through, and monitored by, the Texas Association of School Boards. We find that the record sufficiently establishes that CISD is a school district covered by Tex.Civ.Prac. & Rem.Code Ann. § 101.023.

■ Turning to Olivares's second argument, we find that a school district is not a "municipality" as that term is used in Tex. Civ.Prac. & Rem.Code Ann. § 101.023. Olivares cites two cases, *Love v. City of Dallas*, 120 Tex. 351, 40 S.W.2d 20 (1931) and *Stein v. Highland Park I.S.D.*, 540 S.W.2d 551 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.) in support of his contention. These cases, however, are inapposite to the issue Olivares asserts. Both cases hold that a school district is "quasi-municipal," has the same characteristics as a "municipal corporation," and enjoys the same immunities that a municipality enjoys. *Love*, 40 S.W.2d at 26; *Stein*, 540 S.W.2d at 553. That a school district has characteristics similar to a municipality and enjoys immunities similar to a municipality does not, however, make a school district a municipality. School districts and municipalities are two separate types of governmental entities. *See Dillard*, 806 S.W.2d at 595 (declining to apply exception from sovereign immunity to a school

district because exception was limited in application to municipalities). *See also,* Tex. Loc.Gov't Code Ann. §§ 5.001–.005 (Vernon 1988) (defining types of municipalities without mention of "school district") and § 5.904 (Vernon Supp.1996) (illustrating relationship of terms "municipal corporation," "municipality," "city," "town," and "village" without mention of "school district"). We conclude that CISD is not a municipality subject to the higher damages limitation found in Tex. Civ.Prac. & Rem.Code Ann. § 101.023(c). Rather, CISD is a "unit of local government" pursuant to Tex.Civ.Prac. & Rem.Code Ann. § 101.023(b).

■ Accordingly, we overrule CISD's first point of error and find that the Legislature waived the school district's immunity from retaliatory discharge claims. We sustain CISD's second point of error, and find that the trial court erred in failing to apply the statutory cap limiting damages recoverable against CISD to $100,000. The trial court's judgment awarded pre-judgment interest on the original $200,000 verdict. Pre-judgment interest is an element of damage and is not recoverable against a school district if the pre-judgment interest causes the total damages to exceed the cap. *See Weller v. State,* 682 S.W.2d 234, 234–35 (Tex.1984). As further set out below, pre-judgment interest therefore is not recoverable by Olivares in this case.

In its next six points of error, CISD challenges the validity of each of the jury's damage findings. The jury found a total of $200,000 in actual damages against CISD broken down as follows: (1) $20,000 for lost wages and employment benefits in the past; (2) $100,000 for lost wages and employment benefits in the future; (3) $30,000 for mental anguish suffered in the past; and (4) $50,000 for future mental anguish. We will discuss each of CISD's challenges as necessary in turn.

■ In its seventh and eighth points of error, CISD argues that the trial court erred in entering judgment on the jury's past and future mental anguish findings because mental anguish is not an element of damage allowed by the Texas Tort Claims Act. As we have already determined, CISD is correct

in its assertion that Olivares's damages are limited in accordance with the terms of the Tort Claims Act. *See City of LaPorte,* 898 S.W.2d at 299; *Kuhl,* 910 S.W.2d at 931. We nonetheless find points seven and eight to be without merit because mental anguish is an element of actual damage recoverable pursuant to the Tort Claims Act. *See Shade v. City of Dallas,* 819 S.W.2d 578, 582 (Tex. App.—Dallas 1991, no writ) (plaintiff stated cause of action under Act by claim of mental anguish resulting from city's negligent placement of sewer pipe causing sewage to back up into house); *City of Watauga v. Taylor,* 752 S.W.2d 199, 204 (Tex.App.—Fort Worth 1988, no writ) (mental anguish arising from flooding caused by City's negligent maintenance of drainage ditch). Accordingly, we overrule Points of Error Seven and Eight and find that Olivares is entitled to recover a total of $80,000 in past and future mental anguish as awarded by the jury.

■ In its third and fourth points of error, CISD challenges the legal and factual sufficiency of the evidence to support the jury's finding of $20,000 in past lost wages to Olivares. When presented with a "no evidence" or legal sufficiency challenge, this Court will consider the evidence and all reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America,* 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford,* 726 S.W.2d at 16. In reviewing a factual sufficiency challenge, on the other hand, this Court considers and weighs all the evidence presented at trial. *Lofton v. Texas Brine Corporation,* 720 S.W.2d 804, 805 (Tex.1986). We may set aside a finding only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). This Court is not a fact finder, so we may not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if the evidence

would clearly support a different result. *Acme Boot Co., Inc. v. Montenegro,* 862 S.W.2d 806, 809 (Tex.App.—El Paso 1993, no writ). After carefully reviewing the evidence in this record, we find it sufficient to support the verdict under both standards.

■ The jury awarded Olivares $20,000 for wages and employment benefits lost between his termination and the time of trial. The amount of damages is clearly supported in the record. The correct measure of damages for past lost wages is the amount of money the employee would have earned had he or she not been terminated, less the sum he or she did earn after termination. *See Southwest Airlines Co. v. Jaeger,* 867 S.W.2d 824, 835 (Tex.App.—El Paso 1993, writ denied). Olivares testified that, at the time of his termination, he was making $6.61 per hour and working 40 hours per week. Olivares had not returned to work as of October 18, 1994, the date of trial. It follows mathematically that Olivares could have earned approximately $21,680 in the 82 weeks between March 31, 1993 and October 18, 1994.

There was evidence in the record that Olivares was unable to find work not because of his termination, but because of the back injury that formed the basis of his last Worker's Compensation claim. On March 31, 1993, the same day Olivares was terminated, Olivares's doctor wrote a letter stating that Olivares was to stay off of work until further notice due to an injury. There is no evidence in the record that Olivares was ever medically cleared to return to work. Olivares's wife, Maria Olivares, testified that Olivares was unable to work because of his injuries. While the jury could have concluded from this evidence that Olivares's lost wages are entirely attributable to his injury, not to his termination, the jury chose not to do so.

There is other evidence in the record sufficient to support the jury's verdict. Olivares testified that his termination caused him such stress that he considered suicide. The stress of the termination, according to Olivares, changed his personality and deprived him of his ability to find work. After his termination, Olivares ran for Justice of the Peace in his precinct "to try to pick up the pieces," but he was not elected. From this evidence,

the jury could have concluded that, while he may be medically unable to return to a job requiring heavy physical labor such as grounds keeping or custodial work, Olivares is able to perform office work, such as serving as a Justice of the Peace, but is unable to acquire or maintain such a job due to problems flowing from his termination. Although a different jury on a different day may have reached a contrary conclusion, the evidence in favor of this verdict constitutes much more than a scintilla. We do not find this jury's verdict to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, we overrule CISD's third and fourth points of error and find that Olivares is entitled to recover $20,000 in past lost wages and benefits as found by the jury.

■ In its fifth and sixth points of error, CISD alleges factual and legal insufficiency of the evidence to support the jury's award of $100,000 in future lost wages. Applying the standards set forth above, we find that Olivares failed to present any evidence to support the jury's award of future lost wages. Olivares testified that he intended to work until age sixty-five. He was forty-three years-old at the time of trial. He therefore argues that the evidence is sufficient to support a finding of future lost wages based on the hourly wages he earned at CISD projected into the future for the twenty-two years remaining between the time of trial and Olivares's sixty-fifth birthday. We disagree. Olivares's theory assumes that he will be unable to work at any point in the future. Olivares presented no evidence whatsoever to support the assertion that he will never work again. In fact, we find the record void of any evidence regarding Olivares's future capacity to earn income. There is no testimony whatsoever establishing if, when, or in what capacity Olivares will be able to earn a living in the future. The evidence and all reasonable inferences drawn therefrom, even viewed in their most favorable light, cannot support the jury verdict on future lost wages.

Accordingly, we sustain Point of Error Five and find the evidence legally insufficient to support the jury's award of $100,000 in future lost wages. In any event, Olivares's

damages against CISD are limited to $100,-000. Tex.Civ.Prac. & Rem.Code Ann. § 101.023; *Kuhl,* 910 S.W.2d at 931. Having found $100,000 in legally and factually supportable damages, we conclude that Olivares is entitled to judgment against CISD in the amount of $100,000. Our disposition of these matters makes it unnecessary to reach Point of Error Six, CISD's factual sufficiency challenge.

Having sustained CISD's second and fifth points of error, we modify the trial court's judgment to reflect a total damage award to Olivares in the amount of $100,000. We further modify the judgment to delete pre-judgment interest because the damages awarded equal the maximum damages recoverable pursuant to Tex.Civ.Prac. & Rem.Code Ann. § 101.023. Olivares is entitled to post-judgment interest and we do not modify the award post-judgment interest except to the extent that it is applied to the damages as modified rather than to the original $200,000 damage award. *See Texas Dep't of Transp. v. Ramming,* 861 S.W.2d 460, 469 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (post-judgment interest is a method of enforcement, not an element of damage subject to the cap on *damages* found in Tex.Civ. Prac. & Rem.Code Ann. § 101.023). We sustain the judgment of the trial court as modified.