## TEXAS DEPARTMENT OF HEALTH, Appellant,

v.

### Rafael RUIZ, Appellee.

### No. 08–96–00255–CV.

Court of Appeals of Texas, El Paso.

May 8, 1997.

Rehearing Overruled Sept. 11, 1997.

Mary Leslie Stewart, Asst. Attorney General, Tort Litigation Division, Austin, Sheila Ellwood Skaggs, Assistant Attorney General, Natural Resources Division, Austin, for Appellant.

Enrique Moreno, Moreno, Fry & Bassham, El Paso, Thomas A. Spieczny, El Paso, for Appellee.

Before BARAJAS, C.J., and McCLURE and CHEW, JJ.

### *OPINION*

BARAJAS, Chief Justice.

This is an appeal from a jury finding that Appellee, Rafael Ruiz, was an employee of Appellant, Texas Department of Health, and that Appellant discriminated against Appellee in violation of the Texas Workers' Compensation Act, Anti–Retaliation Provision. The judgment of the trial court awarded Appellee the sum of $250,000, and ordered that he be reinstated to his former position. We find that the State of Texas has not waived its sovereign immunity to be sued under the Anti–Retaliation Provision, reverse the judgment of the trial court, and render judgment that Appellee take nothing.

## SUMMARY OF THE EVIDENCE

Rafael Ruiz, Appellee, was hired by the Texas Department of Health (TDH) in 1969 as an x-ray technician. In 1985, Appellee and El Paso City–County Health Department (EPCCHD) entered into a contract whereby control and supervision of Appellee was transferred to EPCCHD, but TDH continued to provide him with salary and benefits. Appellee was employed with TDH and EPCCHD for eighteen and one-half years.

Appellee was also interested in boxing. He boxed as a young boy, and he coached boxers on a voluntary basis on weekends and after work.

On April 13, 1988, Appellee injured his back at work. He reported his accident to his supervisor and the requisite worker's compensation forms were completed. While he was on leave for his work related injury, he received a call from one of his former boxing pupils, David Acosta. Acosta had been offered a match that was to be televised nationally from Las Vegas, and asked Appellee to serve as his corner man. On June 24, 1988, Appellee traveled to Las Vegas to act as a corner man. The fight consisted of four three minute rounds. The fight was shown on ESPN Network where Appellee was observed climbing in and out of the ring and performing the duties of a corner man.

A few days after Appellee returned home, Appellee received a "Pre–Termination Hearing Notice." The notice scheduled a hearing for June 30, 1988. The director of EPCCHD, Dr. Nickey, fired Ruiz on July 13, 1988, by mailing him a Notice of Termination. The reasons given were for abuse of sick leave and for engaging in outside employment without prior approval, even though Appellee was previously warned on February 29, 1988 that his continued abuse of sick leave would result in disciplinary action. Appellee appealed his termination to the EPCCHD Disciplinary Review Committee. Upon the Committee's recommendation, Dr. Nickey upheld the termination. Simultaneously with his termination, TDH suspended Appellee's worker's compensation benefits because Appellee "was observed working while he was allegedly totally disabled."

Appellee filed suit against TDH for violation of the Anti–Retaliation Law (Article 8307c of the Texas Workers' Compensation Statutes) on August 10, 1990. The jury found that Appellee was an employee of TDH in 1988 and also found that TDH had discharged or discriminated against Appellee in violation of the Texas Workers' Compensation Act. The jury awarded damages totaling $200,000 and the trial court entered judgment amounting to $250,000 and ordered that TDH reinstate Appellee to his former position.

## DISCUSSION

Appellant brings ten points of error challenging the judgment of the trial court. Point of Error No. One alleges the trial court erred in entering judgment against TDH in violation of the doctrine of sovereign immunity. We agree.

This is a case of first impression, this Court having found no reported cases in which an agency of the State of Texas has been held liable for violation of the Texas Workers' Compensation Act, Anti–Retaliation Provision.

The Texas Department of Health (TDH) is an agency of the State of Texas, created by the Legislature. TEX. HEALTH & SAFETY CODE ANN. § 11.002 (Vernon 1992). It is entitled to sovereign immunity from suit and from liability, in the absence of a constitutional or statutory provision. *Duhart v. State*, 610 S.W.2d 740, 741 (Tex.1980). The waiver of sovereign immunity is a matter addressed to the Legislature, and the Legislature must waive sovereign immunity by clear and unambiguous language. *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995); *Duhart*, 610 S.W.2d at 742; *Canutillo Indep. Sch. Dist. v. Olivares*, 917 S.W.2d 494, 496 (Tex.App.—El Paso 1996, no writ). It is the Legislature's prerogative to waive sovereign immunity. *Abraham Nee Ntreh v. Univ. of Texas at Dallas*, 936 S.W.2d 649, 653 (Tex.App.—Dallas 1996, writ pending), *citing Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994).

In the instant case, we must determine whether Article 8703c,[1] the Anti–Retaliation Provision, waives the sovereign immunity of the State of Texas and thus allows a state employee to bring suit. Article 8703c has never been amended but has since been recodified without substantive change as Sections 451.001–.003 of the Texas Labor Code.[2] *Barfield*, 898 S.W.2d at 293. In *Barfield*, the Supreme Court was tasked to determine whether the Legislature had by clear and unambiguous language waived municipal immunity for the retaliatory termination claims. The Court commenced its discussion of sovereign immunity by stating:

> One might suppose that this determination would be a relatively easy matter, and it would be, of course, had the Legislature ever stated, to take one extreme, that governmental immunity for retaliatory discharge claims is waived—in those exact words—just as it would be if, to take the other extreme, the Legislature had never broached the issue at all.

*Id.* at 291–92. The Supreme Court found that a waiver of immunity was based on how the Anti–Retaliation Provision was applied to political subdivisions, rather than finding that the Anti–Retaliation Provision expressly waived the municipality's immunity or that the adoption of the Anti–Retaliation Provision through the Political Subdivisions Law waived immunity. *Id.* at 293–96.

The Court found that the Legislature waived governmental immunity for political subdivisions because of the presence in the Political Subdivisions Act of two different election of remedies provisions, one present in the 1981 Act and another in the 1989. At Section 3(a)(5) of the 1981 version of the Political Subdivisions Act, an election of remedies provision required political subdivisions to elect between employees filing under the Anti–Retaliation Act, or providing them another remedy by charter or ordinance for ultimate access to the district court for wrongful discharge. *Id.* at 295. The Court stated, "Absent a clear expression of intent to waive immunity completely, we do not construe Section 3(a)(5) to waive immunity for relief other than what cities might themselves elect to provide to avoid application of the Anti–Retaliation Law." *Id.* at 297. In effect, this election provision waived sovereign immunity for limited relief.

The Court, in focusing on the election-of-remedies provisions found in the Political Subdivisions Act,[3] stated as follows:

> Finally, both the 1989 and 1993 versions of the Political Subdivisions Law required an election between an action for a violation of the Anti–Retaliation Law and an action for the Whistleblower Act. Since immunity has clearly been waived for the latter statute, ... the requirement of an election suggests that immunity is also waived for the former.... The Anti–Retaliation Law and the Whistleblower Act are not, of course, coextensive, but to the extent they might both apply in a situation, it would make little sense to require an employee to elect between an action barred by immunity and one not barred.
>
> .    .    .    .    .
>
> This election-of-remedies provision ... persuades us, in the end, that the Legislature must have intended to waive **political subdivisions' immunity** for liability imposed by the Anti–Retaliation Law. [Emphasis added].

*Id.* at 298; *Canutillo Indep. Sch. Dist.*, 917 S.W.2d at 496–97.

This election-of-remedies provision found in the Political Subdivision Act is not present in the current statute, or its predecessors, as being applicable to agencies of the State of Texas.[4] As stated above, the Supreme Court found a waiver of immunity for political sub-

---

1. Tex.Rev.Civ.Stat.Ann. art. 8307c. *See* Act of Apr. 22, 1971, 62nd Leg., R.S., ch. 115, § 1, 1971 Tex. Gen. Laws 884, 884, repealed by Act of Sept. 1, 1993, 73rd Leg., R.S., ch. 269, § 5, 1993 Tex.Gen.Laws 1273 (current version codified at Tex. Lab.Code Ann. § 451.001 (Vernon Supp. 1997)).

2. Tex.Lab.Code Ann. § 451.001 (Vernon 1996)

3. Formerly codified as Tex.Rev.Civ.Stat.Ann. art. 8309h, § 3 is now codified at Tex.Lab.Code Ann. § 504.003 (Vernon 1996).

4. Formerly codified as Tex.Rev.Civ.Stat.Ann. art. 8309g; currently codified as Tex.Lab.Code Ann. §§ 501.001–501.050 (Vernon 1996).

divisions only because of the of the election-of-remedies provisions included in the Political Subdivisions Law, as codified previously and currently. There is no election provision in the 1981 version of Article 8309h,[5] which would apply in this case since Appellee was terminated in 1988. The absence of a corresponding provision in the state application statute persuades this Court to conclude that there is no clear and unambiguous intent to waive sovereign immunity for agencies of the State of Texas. On review, we have extensively examined other pertinent statutes in which the Texas Legislature has provided a clear intent to waive sovereign immunity. Using those statutes as a guide, we fail to find the same clear and unambiguous language in the instant statute. The clearest expression of Legislative intent waiving sovereign immunity is found in the Texas Tort Claims Act.[6] Although this is not an absolute waiver, it does provide clear guidance that when the Legislature wishes to express its intent in clear and unambiguous language it can do so. Section 101.025 of the Texas Tort Claims Act states:

> (a) Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.

> (b) A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.025 (Vernon 1986). In the next section, the Legislature again expressed its intent by preserving an individual employee's immunity. Section 101.026, entitled Individual's Immunity Preserved, states:

> To the extent an employee has individual immunity from a tort claim for damages, it is not affected by this chapter.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.025 (Vernon 1986). The Act also provides what types of acts the government is liable for[7] and expresses a limitation on the amount of any such liability.[8] As noted above, in the statute at issue in the instant case, we do not find the clear and unambiguous waiver of immunity the Legislature has seen fit to supply in the Texas Tort Claims Act.

Other acts clearly show the Legislature's intent concerning immunity. For instance, Chapter 75 of the Texas Civil Practice & Remedies Code, entitled Limitations of Landowner's Liability,[9] was amended in 1995 to add Subsection (f) which plainly states, "[t]his chapter does not waive sovereign immunity."[10] Texas Water Code, Section 55.204, entitled Waiver of District Tort Immunity, states in pertinent part, "[i]f the board finds that it is in the best interest of the district ... it may enter into a written contract to waive in advance the district's immunity from liability damages...."[11] The Texas Family Code, Section 54.044, reads in part, "[t]his subsection does not waive a defense, immunity, or jurisdictional bar available to the municipality or county or its officers or employees, nor shall this section be construed to waive, repeal, or modify any provision of Chapter 101, Civil Practice and Remedies Code."[12]

The Government Code also refers to sovereign immunity. Section 403.076, entitled Tax Refunds, states in part:

> (i) This section is not a waiver of sovereign immunity for a refund suit. A person claiming a refund may not seek or obtain judicial review of a determination by the agency with which a refund claim is filed or by the agency having the responsibility to make a refund relating to the refund claim unless the legislature by resolution

---

**5.** There is no election of remedies provision provided for in the 1989, nor 1993 Act dealing with state agencies.

**6.** TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.001–101.109 (Vernon 1986 and Pamph.1997).

**7.** TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

**8.** TEX.CIV.PRAC. & REM.CODE ANN. § 101.023 (Vernon 1986 and Supp.1997).

**9.** TEX.CIV.PRAC. & REM.CODE ANN. § 75.001 et seq. (Vernon 1986 and Supp.1997).

**10.** TEX.CIV.PRAC. & REM.CODE ANN. § 75.003 (f)(Vernon 1986 and Supp.1997).

**11.** TEX.WATER CODE ANN. § 55.204 (Vernon 1972).

**12.** TEX.FAM.CODE ANN § 54.044 (d)(Vernon 1996).

grants permission for a person to seek judicial review of the determination.

TEX.GOV'T CODE ANN. § 403.076(i)(Vernon 1990). While Section 404.103 reads, "and the state expressly waives all defenses of governmental immunity by and on behalf of the trust company.... However, this provision does not alter or affect the immunity accorded to state officials and employees under state law." TEX.GOV'T CODE ANN. § 404.103(b)(Vernon 1990). The Legislature also provided for clear and unequivocal waiver of sovereign immunity when drafting the Whistleblower Act.[13] The Act provides:

Section 554.0035. Waiver of Immunity

A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

TEX.GOV'T CODE ANN. § 554.0035 (Vernon Supp.1997). The government code also expresses a clear intent to waive governmental immunity in Sections 2007.004 and 2007.024.[14] While Section 612.002 expressly states, "(e) This section does not waive state immunity from liability for the torts of negligence of its employees." TEX.GOV'T CODE ANN. § 612.002 (Vernon 1994). Again, it is clear that the Legislature uses clear language to suggest whether immunity is or is not waived.

Other codes also contain language demonstrating the Legislature's clear intent. The Health and Safety Code contains Section 756.061(c), which simply states that this section:

(1) does not create, increase, decrease, or otherwise affect a person's liability for damages for injury, death, or other harm caused by playground equipment, surfacing, or the installation of the equipment or surfacing; and

(2) is not a waiver of sovereign immunity of any governmental entity.

TEX. HEALTH & SAFETY CODE ANN. § 756.061(c)(Vernon Supp.1997). The Natural Resource Code, Section 52.035, entitled Agreements With U.S. Government, provides that the governor "may agree to waive sovereign immunity and other defenses as prescribed by this section, and may agree to indemnify the United States government...."[15] While Subsection (c) clearly provides:

(c) The state waives its right to claim sovereign immunity in any action commenced against the state for unauthorized disclosure of the confidential information obtained from the Department of the Interior under an agreement executed by the governor under Subsection (a) of this section, and waives its right to claim that an employee who revealed privileged information was acting outside the scope of employment by disclosing the information.

TEX.NAT.RES.CODE ANN. § 52.035 (c)(Vernon Supp.1997). The Transportation Code simply states that Section 201.106 "is not a waiver of immunity of the state from liability for the torts or negligence of an officer or employee of this state." TEX.TRANSP.CODE ANN. § 201.106 (Vernon 1997). The Red River Compact, contained in the Water Code, Section 46.013 provides that nothing in this compact shall be deemed to "[w]aive any state's immunity under the Eleventh Amendment of the Constitution of the United

---

**13.** TEX.GOV'T CODE ANN. § 554.001 et seq. (Vernon Pamph.1997).

**14.** In Section 2007.004 of the Government Code, it provides:

Waiver of Governmental Immunity; Permission to Sue
  (a) Sovereign immunity to suit and liability is waived and abolished to the extent of liability created by this chapter.
  (b) This section does not authorize a person to execute a judgment against property of the state or a governmental entity.

TEX.GOV'T CODE ANN. § 2007.004 (Vernon Pamph. 1997). While Section 2007.024 provides in part:
  (c) A governmental entity may elect to pay the damages as compensation to the private real property owner who prevails in a suit or contested case filed under this subchapter. Sovereign immunity to liability is waived to the extent the governmental entity elects to pay compensation under this subsection.
TEX.GOV'T CODE ANN § 2007.024 (Vernon Pamph. 1997).

**15.** TEX.NAT.RES.CODE ANN. § 52.035 (a)(Vernon Supp.1997).

States, or as constituting the consent of any state to be sued by its own citizens." TEX.WATER CODE ANN. § 46.013 (Vernon 1988). The Caddo Lake Compact in contrast, states:

> (c) Should Louisiana, or one of its political subdivisions, unilaterally raise the Caddo Lake spillway level without obtaining flowage easements in Texas, Louisiana would have the right to all water made available by the enlargement; provided, however, this provision constitutes an express waiver of any sovereign immunity or Eleventh Amendment defenses which might otherwise be available to the State of Louisiana in an action for damages by a Caddo Lake property owner in Texas for damage resulting from such action.

TEX.WATER CODE ANN. § 47.011 (Vernon 1988).

From an exhaustive examination of the Anti–Retaliation Provision, as well as all other codes in which sovereign immunity has been waived, we find that although the Legislature clearly possesses the ability, if not the duty under certain circumstances, to provide clear and unambiguous language concerning the waiver of such immunity, it wholly failed to do so in the statute at issue before this Court. While we find that the result is harsh, we note that respect for the constitutional principle of separation of powers properly prohibits us from legislating such a waiver of immunity where no clear intent has been shown. Rather, we are to be guided by the Texas Legislature or the Texas Supreme Court. Appellant's Point of Error No. One is sustained.

Having sustained Appellant's Point of Error No. One, renders it unnecessary to discuss any remaining points. We reverse the judgment of the trial court, find that the State of Texas, through its Legislature, has yet to waive sovereign immunity as it pertains to the Anti–Retaliation Provision, and render judgment that Appellee take nothing.