Carol Ann **MILNER**, Appellant,

v.

**CITY OF LEANDER; Axia Services, Inc.; and Texas Municipal League Intergovernmental Risk Pool, Appellees.**

No. 03–98–00686–CV.

Court of Appeals of Texas, Austin.

March 23, 2000.

Released for Publication Oct. 5, 2000.

David Bolduc, McCollough & Associates, P.C., Austin, for appellant.

Robert D. Stokes, Flahive, Ogden & Latson, Wren Gray Foster, Law Office of Tony Korioth, P.C., Austin, for appellees.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

MARILYN ABOUSSIE, Chief Justice.

Appellant Carol Ann Milner sued appellees[1] under statutory causes of action

---

1. Appellee City of Leander was Milner's employer and is a member of appellee Texas Municipal League Intergovernmental Risk Pool (the Pool). Appellee Axia Services, Inc.

seeking review and reassessment of a workers' compensation claim and under a common law cause of action for breach of the duty of good faith and fair dealing in handling the claim.[2] The trial court granted partial summary judgments on the tort claim in favor of each appellee. The trial court also rendered a partial summary judgment on a legal issue relating to one statutory cause of action but then dismissed the entire cause for lack of jurisdiction. Milner appeals all five rulings. We will reverse the order of dismissal, affirm the three summary judgments on the tort claim, affirm the partial summary judgment on the statutory cause of action, and remand the cause for further proceedings on the remaining issues in the statutory causes of action.

## BACKGROUND

Carol Ann Milner was employed by appellee City of Leander in its police department as a dispatcher/secretary. On July 8, 1992, Milner suffered an on-the-job injury and sought compensation. On November 12, 1993, Milner's chiropractor certified that Milner had an impairment rating of thirteen percent. At the benefits review conference, Axia made an oral request that Milner be re-examined. The benefits review officer construed this request as a dispute of the impairment rating certified by Milner's chiropractor and assigned a designated doctor. Milner did not question the initial impairment rating challenge or the appointment of the designated doctor. On March 24, 1994, a second benefit review conference was held, at which the designated doctor reported that he had certified Milner's impairment rating to be only five percent.

Milner disagreed with the designated doctor's impairment rating, and a contested case hearing was held. The hearing officer determined that: (1) the first impairment rating had not become final; (2) the designated doctor had been properly appointed; (3) the designated doctor's report was not overcome by the great weight of other medical evidence; (4) Milner's correct rating was five percent impairment; and (5) Milner did not have a disability after August 7, 1992. Dissatisfied with the results of the hearing, Milner sought review by an appeals panel of the Texas Workers' Compensation Commission. The appeals panel affirmed the decision, and Milner brought suit in the district court in Williamson County.

In her petition, Milner asserted four causes of action. In her first cause of action, Milner claimed that appellees had breached their duty of good faith and fair dealing in handling her compensation claim. Milner also alleged that several errors occurred in the administrative proceedings; she sought a trial *de novo* on the issue of impairment in her second cause of action and a substantial-evidence review of procedural and legal issues in her third cause of action. In her final cause of action, Milner sought a declaratory judgment on issues relating to both her common law tort claim and her statutory workers' compensation claims.

In January 1997, the trial court granted summary judgments in favor of all three

---

acted as adjustor on Milner's claim under a contract between Axia and the Pool. For convenience, we will refer to these parties collectively as "appellees."

2. In her petition, Milner alleged four causes of action—one for bad faith, two relating to statutorily defined procedures under the

Workers' Compensation Act, and one for declaratory judgment involving elements of the common law and statutory causes of action. For simplicity, we will group the claims broadly as the common law tort cause of action and the statutory workers' compensation causes of action.

appellees on the good-faith-and-fair-dealing cause of action. Although the summary judgments disposed of the tort claim, neither side requested severance of that action. On November 2, 1998, the trial court also granted a partial summary judgment on one of Milner's administrative complaints, finding that appellee's oral request at the benefits review conference was sufficient under the Texas Administrative Code to dispute the impairment rating made by Milner's chiropractor. The same day, the trial court ordered that Milner's cause be dismissed for lack of jurisdiction because she had failed to comply with the Labor Code requirement that a copy of the pleadings in a workers' compensation action be filed simultaneously with the court and with the Commission and served on any opposing parties. *See* Tex.Labor Code Ann. § 410.253 (West 1996).

Because the first three summary judgments disposed of Milner's common law cause of action and the dismissal disposed of the remaining statutory causes, there was a final, appealable judgment disposing of all parties and issues in the suit.[3] *See Hervey v. Flores,* 975 S.W.2d 21, 24 (Tex. App.—El Paso 1998, pet. denied) (stating that series of piecemeal orders may constitute final, appealable judgment). Milner appealed to this Court. In four issues, Milner challenges the summary judgments and the order of dismissal.

■ A dismissal of a cause does not constitute a decision on the merits. As our supreme court has noted many times, "[i]t is elementary that a dismissal is in no way an adjudication of the rights of parties; it merely places the parties in the position that they were in before the court's jurisdiction was invoked just as if suit had never been brought." *Crofts v.*

*Eighth Court of Civil Appeals,* 362 S.W.2d 101, 104 (Tex.1962). In ordering dismissal of Milner's cause of action based on lack of jurisdiction, the district court implicitly vacated its earlier rulings. Thus, the partial summary judgment on the statutory claim is not properly before us. Nevertheless, the Texas Supreme Court has directed the courts of appeals to decide the appeal of underlying rulings even though the entire cause was dismissed for lack of jurisdiction. *See Lone Star Gas Co. v. Railroad Comm'n,* 767 S.W.2d 709, 710 (Tex.1989).

## DISCUSSION

### *Dismissal for lack of jurisdiction*

In her first issue, Milner contends that the trial court erred in dismissing her statutory causes for lack of jurisdiction because she failed to comply with section 410.253. We agree, and appellees concede that dismissal was incorrect. The Texas Supreme Court recently held that section 410.253 is mandatory and that a copy of a workers' compensation petition must be filed with the Commission on the same day it is filed in the trial court, but the court also held that failure to comply with this mandate does not deprive the trial court of jurisdiction. *See Albertson's, Inc. v. Sinclair,* 984 S.W.2d 958, 962 (Tex.1999); *see also Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75–77 (Tex.2000) (overruling *Mingus v. Wadley,* 285 S.W. 1084 (Tex. 1926), to extent that *Mingus* held that plaintiff's failure to comply with statutory prerequisites could deprive trial court of jurisdiction). We therefore sustain Milner's first issue and reverse the trial court's order of dismissal.

---

3. Because Milner's declaratory judgment action involved the same issues as the common law and compensation causes of action, the denial of relief on those causes effectively disposed of the issues in the declaratory judgment action.

### Sovereign Immunity

■ In her third issue, Milner argues that the trial court erred in granting summary judgment on her bad faith cause of action in favor of the City and the Pool on the basis of sovereign immunity. The facts in this case are not in dispute, and Milner does not contend that the City or Pool could not be immune. Instead, Milner's sole argument is that the relevant statutes reveal a clear and unambiguous waiver of the governmental entities' immunity from suit. Statutory construction is a question of law. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). Therefore, we review *de novo* the judgment granting the City and the Pool immunity. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ The decision to waive immunity is left to the legislature. *See Texas Dep't of Health v. Doe*, 994 S.W.2d 890, 892 (Tex.App.—Austin 1999, pet. filed); *Texas Dep't of Health v. Ruiz*, 960 S.W.2d 714, 715 (Tex.App.—El Paso 1997, writ denied). The legislature must use clear and unambiguous language to effect a waiver of immunity. *See City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex.1995). However, "[t]he rule requiring a waiver of governmental immunity to be clear and unambiguous cannot be applied so rigidly that the almost certain intent of the Legislature is disregarded. Legislative intent remains the polestar of statutory construction." *Id.* at 292. To determine legislative intent, we look to the plain language of the statute. *See Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 602 (Tex. 1999).

Milner's argument is as follows: In adopting the Political Subdivisions Law[4] requiring that governmental entities provide workers' compensation coverage to their employees, the legislature clearly and unambiguously waived governmental immunity for compensation claims. *See Barfield*, 898 S.W.2d at 294. The legislature then amended the Political Subdivisions Law to incorporate chapter 416 of the Labor Code. *See* Tex.Lab.Code Ann. § 504.002(a)(7) (West Supp.2000). Chapter 416 of the Labor Code limits the amount recoverable from an insurance carrier for claims of breach of the duty of good faith and fair dealing in handling workers' compensation claims and states that claims against a governmental entity for a breach are subject to chapters 101 and 104 of the Civil Practice and Remedies Code. *See id.* § 416.002 (West 1996). The Workers' Compensation Act[5] defines "insurance carrier" to include governmental entities that self-insure; thus appellee City of Leander is an insurance carrier for these purposes. *See id.* § 401.011(27) (West Supp.2000). Because chapter 416 places limits on recoveries against "insurance carriers," makes specific reference to bad faith causes of action against "a governmental entity or unit," and makes references to chapter 101 (which limits damages) and to chapter 104 (which contains indemnity and defense provisions), Milner contends that the legislature could have had no other intent in incorporating that chapter into the Political Subdivisions Law than to waive sovereign immunity and allow bad faith and unfair dealing claims to be brought against municipalities. We disagree.

Milner relies on *City of LaPorte v. Barfield* for the proposition that the legislature can implicitly waive immunity. *See*

---

**4.** Tex.Lab.Code Ann. §§ 504.001–.073 (West 1996 & Supp.2000).

**5.** Tex.Lab.Code Ann. §§ 401.001–418.002 (West 1996 & Supp.2000).

*Barfield,* 898 S.W.2d at 292. In *Barfield,* the supreme court considered whether the legislature's incorporation of the Anti–Retaliation Law by the Political Subdivisions Law constituted a waiver of immunity for anti-retaliation claims. *See id.* at 295. In making its determination, the court was guided by the principle that, even if the legislature was not perfectly clear, it could still waive immunity by drafting a statute that could have no other possible purpose. *See id.* at 292. The *Barfield* court considered whether the legislature waived immunity by: (1) adopting the Anti Retaliation Law itself, (2) incorporating that Law into the Political Subdivisions Law, or (3) providing for an election of remedies between the Law and the Whistleblower Act. *See id.* at 293–98.[6] We will use this same approach in evaluating Milner's argument.

*(a) Does Chapter 416 waive sovereign immunity?*

■ Chapter 416 contains no *express* waiver of governmental immunity for breach of the duty of good faith and fair dealing in handling workers' compensation claims. We next consider whether chapter 416, taken as a whole, can have no other purpose than to waive immunity. *See Barfield,* 898 S.W.2d at 292. Within the context of the Workers' Compensation Act, the term "insurance carrier" includes a government entity that self-insures. *See* Tex.Lab.Code Ann. § 401.011. Section

416.002(a) limits the amount that can be recovered from an "insurance carrier" for breach of the duty of good faith and fair dealing. *See id.* § 416.002(a). Read alone, this subsection *implies* that government entities as "insurance carriers" could be held liable for such breaches. However, subsection 416.002(b) states that bad faith actions against government entities are governed by chapters 101 and 104 of the Civil Practice and Remedies Code. *See id.* § 416.002(b).

Chapter 101, also known as the Tort Claims Act (TCA), provides statutory exceptions to the traditional common-law rule that governments enjoy immunity from suit. The supreme court has determined that the TCA does not provide a general waiver of immunity from bad faith claims and that such claims are *not* personal injuries arising from misuse of personal property, for which immunity is waived. *See University of Tex. Med. Branch v. York,* 871 S.W.2d 175, 179 (Tex. 1994).

■ Chapter 104 mandates that the state has a duty to indemnify for torts only if they are committed in the course and scope of employment and are the result of negligence.[7] *See* Tex.Civ.Prac. & Rem. Code Ann. § 104.002(a)(2) (West 1997). If a state employee acts willfully, wantonly, or with gross negligence, the state has no duty to indemnify.[8] *See id.* Under chap-

6. The court held that neither adoption of the Anti–Retaliation Law nor its incorporation into the Political Subdivisions Law waived immunity but ultimately held that the legislature must have intended to waive immunity when it provided that plaintiffs had to elect as between the Anti Retaliation Law and the Whistleblower Act, for which immunity had clearly been waived. *See Barfield,* 898 S.W.2d at 298.

7. The state must also indemnify for non-negligent acts if they either deprive someone of a constitutionally protected right or if the attor-

ney general or a designee has determined that indemnification is in the state's best interest. *See* Tex.Civ.Prac. & Rem.Code Ann. § 104.002(a)(2), (3) (West 1997). Neither of these alternatives applies in this case.

8. Although chapter 104 concerns the state's duty to indemnify, chapter 102, governing a municipality's duty, contains a similar requirement that the tort be committed within the scope of employment and be one of negligence. *See* Tex.Civ.Prac. & Rem.Code Ann. § 102.002(a) (West Supp.2000).

ter 104, the state cannot be required to indemnify for a bad faith claim against an employee because bad faith is an intentional tort requiring proof that the insurer "knew or should have known" that it had no reasonable basis for denying or delaying payment of a claim. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 18 (Tex.1994). In addition, section 104.008 states that chapter 104 "does not waive a defense, *immunity*, or jurisdictional bar available to the state." Tex.Civ.Prac. & Rem.Code Ann. § 104.008 (West 1997) (emphasis added). Reading section 416.002 in light of chapters 101 and 104, we do not believe the legislature's only possible intent in adopting chapter 416 was to waive immunity.

*(b) Waiver by incorporation?*

We next consider whether the legislature expressed a clear intent to waive immunity by incorporating chapter 416 into the Political Subdivisions Law. Milner argues that the reason the supreme court rejected the waiver-by-incorporation argument in *Barfield* was that the Anti–Retaliation Law said that a "person" could be in violation, but the Political Subdivision Law did not equate "person" with "political subdivision." *See Barfield*, 898 S.W.2d at 295. Milner contends there is no such problem here because the Workers' Compensation Act specifically defines person to include a "governmental entity or unit" and defines "insurance carrier" to include self-insured municipalities. We disagree with Milner's reading of *Barfield.* The definitional issue in *Barfield* merely supported the supreme court's view that the legislature had expressed no clear intent to waive immunity. *See id.* at 295–96. The supreme court's reason for rejecting the waiver-by-incorporation argument was that it was a "putative purpose argument" that it had previously rejected. *See id.* at 295; *Duhart v. State*, 610 S.W.2d 740, 742–43 (Tex.1980).

The supreme court clearly held in both *Barfield* and *Duhart* that mere incorporation of a provision of one statute into another does not express a clear and unambiguous intent to waive immunity for the incorporated statute. *See Barfield*, 898 S.W.2d at 295; *Duhart*, 610 S.W.2d at 742.

Waiver of immunity is not the only possible purpose accomplished by the incorporation of chapter 416. The Political Subdivisions Law mandates that municipalities provide their employees with workers' compensation coverage but provides that municipalities may achieve this end by: (1) becoming a self-insurer, (2) securing workers' compensation insurance from a private carrier, or (3) entering into a pooling arrangement with other self-insured political subdivisions. *See* Tex.Lab.Code Ann. § 504.011 (West 1996). Incorporation of chapter 416 ensures that private insurance carriers are treated the same under their contracts providing municipalities with workers' compensation coverage as they are under their contracts providing private employers with such coverage. Because Milner's argument depends on a reading of *Barfield* that we have rejected, we find nothing to distinguish it from the putative purpose argument rejected by *Duhart* and *Barfield.*

*(c) Election of Remedies*

In *Barfield*, the supreme court ultimately concluded that the legislature waived immunity to Anti–Retaliation suits by providing for an election of remedies between the Anti Retaliation Law and the Whistleblower Act, for which immunity had clearly been waived. *See Barfield*, 898 S.W.2d at 298. The court decided that "it would make little sense to require an employee to elect between an action barred by immunity and one not barred." *Id.* Having evaluated and rejected a number of possible

arguments for waiver, the court specifically stated that it was persuaded by this election of remedies provision. *See id.* There is no election of remedies here, and the other arguments raised by Milner have no more convinced us than they did the supreme court in *Barfield.* We overrule appellant's third issue.

### Adjustor's Duty

■ In her fourth issue, Milner claims that the trial court erred in rendering summary judgment that Axia, as an adjustor, did not owe her a duty of good faith and fair dealing. We disagree.

■ Workers' compensation insurance carriers owe injured employees a duty of good faith and fair dealing in processing compensation claims. *See Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 211–12 (Tex.1988). However, the "special relationship" that gives rise to this duty exists only because the insured and the insurer are parties to a contract that is the result of unequal bargaining power and by its nature allows unscrupulous insurers to take advantage of their insureds. *See Natividad,* 875 S.W.2d at 697–98. Unless an adjustor and the compensation claimant have a special relationship arising out of a contract, the adjustor owes the claimant no duty of good faith and fair dealing. *See id.* at 698.

Here, as in *Natividad,* Milner and Axia have neither a special relationship nor a contract. Applying the *Natividad* model, the parties to this contract were Milner, the City, and the Pool. The City and the Pool, as insurance carriers, had a nondelegable duty to handle Milner's claim fairly and in good faith. *See id.* However, as discussed above, both entities are immune from suit for breaches of this duty. Milner contends that this Court should hold Axia liable in their stead. This we cannot do because the results would be both absurd and unfair. If we held as

Milner suggests, claimants whose claims are adjusted directly by an immune political subdivision would be without recourse, while those whose claims are adjusted by a non-immune third party would be free to sue. Such a holding would penalize adjustors who contract with an immune political subdivision while rewarding those who work only with private employers. Milner argues that this Court ought to shift the insurance carrier's non-delegable duty *in this case* because if we do not, she is without recourse. This argument is often made in cases in which the government is immune; however, the decision to abrogate sovereign immunity and allow recourse to the courts is within the legislature's sole province. *See Federal Sign v. Texas S. Univ.,* 951 S.W.2d 401, 409 (Tex. 1997). We overrule Milner's fourth issue.

### Oral Dispute of Impairment Rating

The trial court granted partial summary judgment in favor of appellees, finding they had orally disputed Milner's impairment rating at the benefit review conference and that this oral dispute satisfied Rule 130.5(d). *See* 28 Tex.Admin.Code § 130.5(d) (1999). The trial court then proceeded to erroneously dismiss Milner's statutory causes of action without deciding the case on the merits. At the urging of all parties, we reverse the dismissal but will determine the propriety of the trial court's ruling on the impairment rating. *See Lone Star,* 767 S.W.2d at 710.

In her second issue, Milner contends that appellees gave her no notice of an intent to dispute her impairment rating prior to the benefit review conference and appellees were therefore precluded from raising the issue. In addition, Milner argues that because it was oral, the request that Milner be examined by another doctor was not sufficient to dispute the initial impairment rating and prevent it from be-

coming final. We disagree with both of Milner's contentions.

For her first argument, Milner cites rule 141.1, which states, "a request for a benefit review conference shall: ... (2) identify and describe the disputed issue or issues." 28 Tex.Admin.Code § 141.1(b)(2) (1999). Milner argues that this section can have no other meaning than to set an agenda for the conference and limit its scope to disputed issues contained in the notice. The appeals panel disagreed with Milner's interpretation stating, "[a] BRC is a proper place for a party to raise whatever dispute exists at the time of the conference...."

■ An agency's reasonable interpretation of its own rules is entitled to deference by the courts. *See Public Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex.1991); *Texas Dep't of Pub. Safety v. Zhao*, 994 S.W.2d 357, 360 (Tex.App.—Austin 1999, no pet.). The reviewing court is limited to determining whether the administrative interpretation "is plainly erroneous or inconsistent with the regulation." *See Gulf States Utils.*, 809 S.W.2d at 207 (citing *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)).

■ The appeals panel's interpretation of rule 141.1 is reasonable. Nowhere does rule 141.1 state—as Milner contends—that the scope of a conference is limited to issues annunciated in the notice. Indeed, such an interpretation conflicts with the Labor Code, which states, "[a] benefit review conference is a nonadversarial, *informal* dispute resolution proceeding designed to ... *delineate* disputed issues." Tex.Lab.Code Ann. § 410.021 (West 1996) (emphasis added). As Milner notes in her own brief, it is well settled that a rule may not impose additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statute. *See Southwestern Bell Tel. Co. v. Public Util. Comm'n,*

888 S.W.2d 921, 926 (Tex.App.—Austin 1994, writ denied). According to Milner, the rule sets a *formal* agenda for a conference and requires that the disputed issues be determined *prior* to the conference. This interpretation contradicts section 410.021 and imposes additional restrictions not required by the rule or statute. The appeals panel's interpretation that the rule does not limit a benefit review conference to issues raised in the notice comports with the plain language of both the rule and the statute, and we defer to that interpretation.

■ Milner further argues that rule 130.5 requires an impairment rating to be disputed *in writing* within ninety days to prevent it from becoming final. *See* 28 Tex.Admin.Code § 130.5 (1999). In its summary judgment, the district court found the evidence was uncontroverted that the City orally disputed the impairment rating and held that the "oral dispute satisfies Tex. W.C. Comm'n, 28 Tex.Admin.Code § 130.5(d)." Milner argues that subsection (a) of the rule mandates that disputes be filed in writing and that subsection (e) dictates that undisputed impairment ratings become final after ninety days. *See* Tex.Admin.Code § 130.5(a), (e). Milner did not make arguments under either of these sections in her response to the City's motion for summary judgment, nor does she contest on appeal the propriety of the court's holding that the oral dispute satisfied rule 130.5(d). On appeal, we cannot consider any ground for reversal that was not expressly presented to the trial court by written motion, answer, or other response to the motion for summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex.1979); *Turner v. Texas Dept. of Mental Health & Mental Retardation*, 920 S.W.2d 415, 420 (Tex.App.—Austin 1996, writ denied).

Even if we could consider Milner's argument, we would not find it persuasive. Rule 130.5(e) states, "[t]he first impairment rating assigned to an employee is considered final if the rating is not disputed within 90 days after the rating is assigned." Tex.Admin.Code § 130.5(e) (1999). This subsection does *not* state that a dispute must be *in writing*. In fact, none of the rules or statutes dealing with an impairment-rating "dispute" defines the term or requires such a dispute be in writing.[9] The dictionary defines dispute, when used as a verb, to mean "to call into question" and, when used as a noun, to mean "a *verbal* controversy." *Webster's Third New International Dictionary* 655 (Philip B. Gove ed., 1961) (emphasis added). Thus, the plain meaning of the term "dispute" does not imply that a dispute must be in writing.

Milner's initial impairment rating was certified November 13, 1993. The first benefits review conference was held January 10, 1994. Milner does not contest the fact that a proper dispute at the January conference would be within the ninety-day window. At the January conference, appellee's attorney requested that Milner get "a second opinion."[10] Milner admitted that the benefit review officer made some explanation of the designated doctor process. Clearly Milner and the Commission were both made aware of the dispute with-

in ninety days. We overrule Milner's second issue.

## CONCLUSION

Having sustained Milner's first issue and overruled her second, third, and fourth issues, we reverse the order of dismissal of the statutory causes, affirm the summary judgments regarding the bad faith claim and rule 130.5, and remand the cause to the trial court for further proceedings on the remaining issues in Milner's statutory causes of action.

---

9. *See* Tex.Labor Code Ann. §§ 408.121 (prescribing when impairment income benefits must be paid), 408.122 (establishing eligibility requirements for impairment income benefits), 408.125 (describing contingencies when rating is disputed) (West 1996); 28 Tex.Admin.Code §§ 130.5 (discussing contingencies when rating is disputed), 130.6 (establishing general provisions for appointment of designated doctor) (1999).

10. Milner, who was not represented, contends that the word "dispute" was never used, that

she did not understand that the request for a second examination could lead to her impairment rating being lowered, and that the benefit review officer did not explain the situation. The issue of whether the benefit review officer informed Milner of her rights and responsibilities was not addressed by the trial court, and we offer no opinion on the subject. *See* Tex. Lab.Code Ann. § 410.026 (West 1996) (establishing powers and duties of benefit review officer).